## JULIUS HAWLEY *vs.* HENRY BEARDSLEY AND ANOTHER.

An injunction was sought against the filling in by the respondents, who were adjoining owners to the petitioner, against the piles of the petitioner's wharf. The filling in was of much importance to the respondents, the sole injury was in the pressure against and partial displacement of the piles, the damage would not exceed $300, which the respondents were of abundant ability to pay, and the injury could be prevented by the petitioner by an inconsiderable outlay. Held that the injunction ought not to be granted.

Injunctions are not granted *ex debito justiciæ*, for every injury threatened or done to the estate or rights of a person, but the granting of them must always

rest in the sound discretion of the court, governed by the nature of the case. They ought to be granted only for the prevention of serious and irreparable injury and where the remedy at law would not be adequate.

PETITION for an injunction; brought to the Superior Court in Fairfield County, and reserved upon facts found for the advice of this court. The case is sufficiently stated in the opinion.

*S. B. Sumner* and *G. Stoddard*, for the petitioner.

*A. S. Treat* and *D. F. Hollister*, with whom was *C. Sherwood*, for the respondents.

PARDEE, J. This is a petition for an injunction. The petitioner is a proprietor upon the west shore of the harbor of Bridgeport; upon his lot he has constructed upon piles a wharf extending over mud-flats toward the channel; upon this he has a large quantity of lumber and a mill for dressing it; vessels come from the natural channel to this wharf through one excavated by him; his premises are valued at $50,000. The respondents are also proprietors upon the west shore of Bridgeport harbor; they have constructed a wharf upon the eastern portion of their lot, and have partially completed a platform from this to the shore; their premises represent an investment of $15,000. They began to deposit mud upon the space next north of the petitioner's wharf for the purpose of converting it into a roadway to the wharf upon the eastern extremity of their lot; for the purpose of retaining the mud where it was deposited they placed planks against the petitioner's north row of piles. Immediately upon the commencement of their work the petitioner requested them to cease, but they continued, and when they had filled to the height of three or four feet he stopped them by an injunction, alleging that the respondents "have commenced to cast and place, and are now casting and placing, and threaten to continue to deposit, cast and place, upon the northerly portion of the petitioner's said premises, great quantities of clay, mud, dirt, gravel and other substances, intending thereby to fill up, and calculated thereby to fill up,

the waters of said harbor on the north side of and upon the petitioner's premises, and also to undermine, disturb, over‑throw, break down and destroy the petitioner's wharves and docks upon his said premises, and to fill up and destroy the privileges of wharfage upon and against and properly belonging to the petitioner's said premises, and to make use of the petitioner's said premises for the private uses and purposes of the respondents."

It is found that such injury to the property and premises of the petitioner as might result from these intended acts of the respondents would be caused alone by the lateral pressure of such deposit against the petitioner's north row of piles. It is found that one pile has been so far forced from its place as no longer to support the timber which rested in part upon it; that as the work progresses probably some, possibly all, of the piles in that row will in like manner be forced from their places; that the replacement of the entire row would cost about $300; that the bracing of one row against the other would probably prevent any injury; and that this can be done at an inconsiderable expense.

As a general rule in cases of private trespass the court will interfere only to prevent irreparable mischief; not where adequate compensation can be obtained at law, without multiplicity of suits or oppressive litigation. It will determine its action in each case in view of what will be the result to the parties of interference on the one hand, and of leaving them to their legal remedies and liabilities on the other; in view of the damages to the petitioner by the denial or to the respondents by the issue of the writ.

In *Enfield Toll Bridge Co.* v. *Connecticut River Co.*, 7 Conn., 50, it is said that "an injunction is not *ex debito justiciæ*, for any injury threatened or done to the estate or rights of a person, but the granting of it must always rest in sound discretion, governed by the nature of the case." In *Whittlesey* v. *The Hartford, Providence & Fishkill Railroad Co.*, 23 Conn., 421, it is said that "writs of injunction are not to be granted for every trifling cause, nor made substitutes for every action of trespass or ejectment.    *    *    They

ought not to be issued except for the prevention of great and irreparable mischief, and in the language of our present statute, in cases only in which adequate relief can not be had in the ordinary course of law."

We have before us a prayer for a permanent injunction against an injury probable but not certain, but if inflicted not to occasion damage exceeding $300, which sum the respondents are of abundant ability to pay; against an injury which can be wholly prevented by an inconsiderable outlay.

The respondents do not threaten to impose any permanent structure upon the petitioner's land; do not propose to commence an use which time might ripen into a right; do not expose him to any injury which is not susceptible either of complete prevention or of accurate measurement and full compensation.

Presumably a solid and permanent way of earth work from the shore across the mud flats to the respondents' wharf upon the channel will greatly enhance the value of their property; a permanent prohibition against the construction of such way would seem to be the infliction of a great injury for the prevention of a possible and small one.

This it is true is not of itself a complete answer to the petition, for even such injuries are to be remedied; but a court of law can do it effectually. The respondents claim no right to displace a pile; we are not to presume that they will voluntarily burden themselves· with the costs of repeated suits; but rather that they will make unnecessary any suit, by themselves bracing the timbers in such a way as to make them secure in their places, or by making full and immediate compensation for each injury as it may occur.

As the case presents itself in the finding, a dissolution of the injunction will make it possible for the respondents to make a profitable use of their property without inflicting any appreciable injury upon the petitioner. It is the office of a court of equity to protect, not to destroy or injure.

The Superior Court is advised to dissolve the temporary injunction and dismiss the bill.

In this opinion the other judges concurred.