No. 10,363.

BARKER v. MINTZ.

Decided April 2, 1923. Rehearing denied May 7, 1923.

Injunction proceedings. Injunction granted.

*Reversed.*

1. WORDS AND PHRASES—*Use.* The word "use" construed not to mean destroy.

2. MINES AND MINING—*Surface and Mineral Rights.* Where the ownership of the surface and the mineral beneath, is severed, the owner of the mineral may take it out, but must support the surface.

3. STATUTES—*Construction—Mines and Mining.* Section 3299, C. L. 1921, regarding the rights of the owner of the surface of mining property, construed to give such owner a right in addition to his previous equitable rights of protection, and not to relegate him to an injunction only in case a bond to secure him against damage is refused.

4. INJUNCTIONS—*Relative Rights of Parties.* While it is better to prevent a wrong than to remedy it, a chancellor will always look to see how great harm his injunction will do the defendant, and no injunction should be granted contrary to the real justice of the case.

5.     *General Rule.* No hard and fast rule can be laid down governing injunctions, each case depending somewhat upon its own facts.

6. DEEDS—*Reservations—Construction.* Exceptions in a deed reserving such surface rights as may be convenient or necessary to coal mining operations, discussed and construed.

*Error to the District Court of Elbert County, Hon. Arthur Cornforth, Judge.*

Mr. J. C. DUNN, Messrs. ORR & LITTLE, for plaintiff in error.

Messrs. DOUD & WALKER, for defendant in error.

*En banc.*

MR. JUSTICE DENISON delivered the opinion of the court.

JENNIE MINTZ obtained a permanent injunction against Wright Barker, restraining him from stripping the earth from above a vein of coal on certain land of which she owned the surface and he the coal. He brings error. The essential facts are these: The Union Pacific Land Company conveyed the land in question, "Excepting and reserving, 1st, All oil, coal and other minerals within and underlying said lands:

2nd, The exclusive right to prospect in and upon said lands for oil, coal and other minerals therein or which may be supposed to be therein and to mine for and remove from said lands all oil, coal and other minerals which may be found thereon by any one;

3rd, The right of ingress, egress and regress upon said land to prospect for, mine and remove any and all such oil, coal or other minerals; and the right to use so much of said land as may be convenient or necessary for the right of way to and from such prospect places or mines and for the convenient and proper operation of such prospect places, mines and for roads and approaches thereto or for removal therefrom of oil, coal, mineral, machinery or other material."

The said company conveyed the coal to Barker in the terms of the said reservations. Each party had full notice of the rights of the other.

Barker claims: First. That by the third paragraph of said reservations and the deed to him he has the right "to use so much land as may be convenient or necessary * * * for the convenient or proper operation of such * * * mines * * *. That the only practicable way to mine this coal is to strip off the soil and gravel lying upon it; that it cannot be practically mined by tunnel or shaft because there is no solid rock above it; that therefore he has a right to "use" so much of said land as may be convenient or necessary, as stated in his deed, by scraping it off and removing it from above the coal. We cannot assent to this interpretation of the word "use." It cannot mean to destroy. It is almost universally held that where the ownership of the surface and the mineral is severed, the owner of the mineral may take it out, but must support the surface. *Burt v. The Rocky Mt. Fuel Co.,* 71 Colo. 205, 205 Pac. 741; *Campbell v. Louisville C. M. Co.,* 39 Colo. 379, 89 Pac. 767, 10 L. R. A. (N. S.) 822.

Second. The plaintiff in error claims that before asking for the injunction the plaintiff must comply with §§ 3159

and 3620 Mills' Ann. Stats., being §§ 4217 and 5134 of R. S. 1908, C. L. 1921, §§ 3299 and 1117.

The second of these sections refers only to lands owned by the United States, so we disregard it.

R. S. 4217, C. L. 3299, is as follows:

"When the right to mine is in any case separate from the ownership or right of occupancy to the surface, the owner or rightful occupant of the surface may demand satisfactory security from the miner, and if it be refused may enjoin such miner from working until such security is given.  The order for injunction shall fix the amount of bond."

This section is capable of two constructions, first, that it gives to the owner of the surface a right in addition to his previous equitable rights.  The other construction, and the one contended for by plaintiff in error, is that the section is restrictive, that it deprives the surface owner of his remedy by injunction in case of irreparable injury, imminent danger or multiplicity of suits, and relegates him to an injunction only in case a bond to secure him against damage is refused, and that the bond if given leaves him to his remedy of damages only.

There is much to be said in favor of this latter construction, but we are constrained to decide in favor of the former because, if the latter were intended, the intent would have been clearly stated.  A simple and straightforward way to express it would have been to say that no injunction should be granted in favor of the surface owner against the miner except as provided in that section.

Third.  The third point made by the plaintiff in error is that the injunction is inequitable.  We think he is right. Inadequacy of the remedy of damages and danger of multiplicity of suits because of continued and repeated trespasses are the grounds urged by the defendant in error to support his injunction.  These are valid reasons.  The cases go very far, Mr. Pomeroy, perhaps, farther, (4 Pom. Eq. Jur., 1357, 4th Ed.) and we are not disposed to disagree with him that it is better to prevent a wrong than to rem-

edy it. But here we are asked to prevent a wrong by doing at least an equal wrong. The plaintiff, insisting on a *legal* right, asks a court of equity to protect that right by an injunction which will hurt the defendant as much or more than his act will hurt her, while she throws away as worthless the protection the *law* gives her. A chancellor will always look to see how great harm his injunction will do the defendant, and will refuse it when the harm is too great. *Hawley v. Beardsley,* 47 Conn. 571; *Chapin v. Brown,* 15 R. I. 579, 586, 10 Atl. 639; *Brande v. Grace,* 154 Mass. 210, 31 N. E. 633; *Jones v. Newark,* 11 N. J. Eq. 452, 456; *Erie R. Co. v. Del. L. & W. et al.,* 21 N. J. Eq. 283, 291, 292; *Morris & Essex R. Co. v. Prudden,* 20 N. J. Eq. 530, 540.

No hard and fast rule can be laid down to govern all cases like this. *Berkey v. Berwind-White Coal Min. Co.,* 220 Pa. 65, 69 Atl. 329, 16 L. R. A. (N. S.), 851, 855; *Hawley v. Beardsley, supra.* Every case depends somewhat upon its own facts. And here it seems to us as inequitable to give a judgment against the defendant which destroys his property, as it would be to let him take out his coal without compensation to the plaintiff, and so destroy hers. Is her property more sacred than his? No injunction should be granted contrary to the "real justice of the case." *Jones v. Newark, supra.* The land is wild and its present value, except for the coal, is only for pasturage, a very little of it for cultivation. The stripping destroys these values, but the fair and equitable way is so to treat the matter that each party will get the greatest amount of good with the least possible harm, and that is by allowing the defendant to take out his coal and pay the plaintiff for the damage he thereby does to her estate. He will then get the full value of his property and she will get the full value of hers. Is not that equity? The court by its general equity powers as well as in proceedings under said R. S. 4217, C. L. 3299, has power, if necessary, to provide for security for the payment from time to time to defendant in error of all damages which may accrue to her,

and, on the evidence now before us, a very small bond would be enough. The fairness and justice of this solution is so obvious that we can see no sufficient objection to it, and deem it according to "the real justice of the case."

[Fourth. Another question is raised by the decree which declares that the defendant Barker has no right to construct or maintain his dwelling house or stables or corrals upon the said land. The undisputed evidence shows that the transportation of this coal was all done with horses and that the stripping was done with plows and scrapers. The third clause of the reservations and of the defendant's deed gives him the right to such use of the land as is convenient or necessary to mine and transport the coal. Unless, therefore, the court was of the opinion that the horses might have been conveniently kept in the stables or corrals off the land in question and that it was not reasonably necessary to use it for that purpose, the decree should have been otherwise. The use of the land for stables, corrals, bunkhouses, etc., might be the only convenient way the mines could be operated. The court makes no special finding upon that point. What is said with reference to these matters is true also of the dwelling house of the defendant; his right to maintain his dwelling-house on the land, if and while necessary or convenient to the operation of the mines, is given by said paragraph as definitely as any other right—the question is whether it is necessary or reasonably convenient, taking into consideration the value of the land, the distance to other available land and all other circumstances. These matters all stand on the same footing as roads, bridges, railroad tracks, shafthouses, engine-houses, etc., that are used in mining operations.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

MR. JUSTICE TELLER not participating.