455 F.2d 1177
 UNITED STATES of America, Plaintiff,
v.
1,253.14 ACRES OF LAND, MORE OR LESS, situate IN JEFFERSON
AND DOUGLAS COUNTIES, STATE OF COLORADO, and Martin Marietta
Corporation, a Maryland corporation, Defendant-Appellant,
and Unknown Owners, Alfred P. Atchison and Ida Mae Atchison,
Defendants-Appellees.
 No. 71-1070 (C-1490).
 United States Court of Appeals,
Tenth Circuit.
 Jan. 24, 1972.
Rehearing Denied April 17, 1972.
 
 Donald C. McKinlay, of Holme, Roberts & Owen, Denver, Colo. (D. Craig Lewis, Denver, Colo., on the brief), for appellant.
 Ralph A. Cole, Denver, Colo. (William O. Perry, and Thomas C. Singer, Denver, Colo., on the brief), for appellees.
 Before LEWIS, Chief Judge, and HAMLEY* and HILL, Circuit Judges.
 LEWIS, Chief Judge.
 
 
 1
 This appeal is from a judgment of the United States District Court for the District of Colorado wherein the interests in a 1.7 million dollar condemnation award were adjudicated in a trial to the court and concerns the interpretation of a mineral reservation. Briefly the facts are these: In 1949 the mayor of the City of Englewood, Colorado was desirous of obtaining a source of water for the City. He approached Mr. and Mrs. Atchison who were then the owners of a 2500-acre ranch contiguous to the flood plain of the South Platte River. For many years the Atchisons had been construction contractors of roads and dams and had conducted gravel operations on their ranch. In order to acquire the desired water, the City agreed also to purchase the land. The Atchisons, however, reserved a
 
 
 2
 one-half interest and right in all minerals, including oil and gas, with right to mine, drill for and extract the same, and reasonable use of the surface of said lands for such purposes.
 
 
 3
 This reservation is the focus of the dispute.
 
 
 4
 Subsequently the appellant, Martin Marietta Corporation (Martin), purchased a portion of that which the City had purchased, and of the 1,234.14 acres now condemned, 1,043 acres are subject to the Atchisons' reservation. Sand and gravel deposits comprise 459 acres of the condemned land subject to the Atchisons' reservation and by virtue thereof they claim an interest in the condemnation award equivalent to one half the value of these sand and gravel deposits. The court below found sand and gravel to be included in the Atchisons' mineral reservation and awarded them their respective portion of the condemnation award amounting to over $300,000 plus interest. Martin claims sand and gravel were not included and appeals. We affirm.
 
 
 5
 The issues raised on appeal may be summarized as follows:
 
 
 6
 I. Did the trial court err in ruling that the language of the reservation was ambiguous?
 
 
 7
 II. Assuming the reservation was ambiguous, did the court err in its finding of the proper meaning of the ambiguous language?
 
 
 8
 III. Did the trial court properly offset against the rights in the mineral reservation the damage to the surface estate which would result from mining?
 
 
 9
 * Martin argues that the reservation is not ambiguous and that as a matter of law sand and gravel are not included in the mineral reservation. Martin's argument is based on the Colorado case of Farrell v. Sayre, 129 Colo. 368, 270 P.2d 190, wherein the following language is quoted from the British case, Waring v. Foden, 1 Ch. 276, 86 A.L.R. 969:
 
 
 10
 The two main principles to be gathered from these pronouncements are, first, that the word "minerals" when found in a reservation out of a grant of land means substances exceptional in use, in value and in character * * * and does not mean the ordinary soil of the district which if reserved would practically swallow up the grant * * *; and secondly, that in deciding whether or not in a particular case exceptional substances are "minerals" the true test is what that word means in the vernacular of the mining world, the commercial world and landowners at the time of the grant, and whether the particular substance was so regarded as a mineral * * *.
 
 
 11
 The trial court received evidence on whether the sand and gravel were exceptional substances in the area. Testimony was also introduced on the question of whether sand and gravel were considered minerals in the respective vernaculars at the time of the grant. As we read the record this evidence was inconclusive and the trial court described this evidence as "kind of unsatisfactory." We agree. Rather than establish that sand and gravel were or were not within the reservation, this evidence tended to confuse. It demonstrated the inherent ambiguity in the reservation of "all minerals" and extrinsic evidence probing the intentions of the parties was called for. Bumpus v. United States, 10 Cir., 325 F.2d 264. See also in this regard Cave Construction, Inc. v. United States, 10 Cir., 387 F.2d 760. Appellant has not satisfied its burden on this question.
 
 II
 
 12
 Appellant's second contention concerns the meaning of the reservation. The record reveals that considerable evidence was heard on the preliminary negotiations between the City and the Atchisons. As indicated above expert testimony was admitted on the issue of composition of gravel and its classification as mineral or non-mineral. It was learned, and Martin had timely notice, that the mineral reservation had been interpreted concerning the mining of clay on the property and the Atchisons had received royalties thereunder. Clay and gravel are of similar composition in that both are a conglomeration of minerals.
 
 
 13
 Appellant cites as error the admission of Atchisons' testimony that they intended to reserve the sand and gravel. But the record indicates that the trial judge did not rely on this testimony. Martin also finds error on two grounds in the introduction of a 1956 letter addressed to Mr. Atchison from the Englewood City Manager. Because the letter applies to a portion of the Atchison ranch which Martin did not purchase, Martin argues it is irrelevant. We disagree. The letter contains the City's interpretation of the Atchison reservation as it applies to gravel. The letter was admitted as an indication of the thinking of the parties and it is an accepted rule of construction and interpretation of contracts that the meaning adopted should be in harmony with that meaning indicated by the actions of the parties and should be the interpretation adopted by the parties. Hill v. Stanolind Oil & Gas Co., 119 Colo. 477, 205 P.2d 643; Whitebird v. Eagle-Picher Co., 10 Cir., 390 F.2d 831; Chevron Oil Co. v. Barlow, 10 Cir., 406 F.2d 687. Martin next complains that the letter was incompetent since it was written six months after Martin took an option on the portion of the ranch it purchased. This argument is invalid because the letter is only an indication of what the parties had continuously considered the meaning of an ambiguous term. Moreover, the admission is not prejudicial since the court's judgment is sustained by evidence independent of the letter.
 
 
 14
 Finally, the record contains substantial evidence to support the trial court's finding that sand and gravel were included in the reservation. This circuit has recognized that
 
 
 15
 In interpreting a contract where resort must be made to extrinsic evidence and more than one inference may be drawn therefrom, a question of fact is presented. Carlock v. National Co-op. Refinery Ass'n, 10 Cir., 424 F.2d 148, at p. 151.
 
 
 16
 It is also an accepted standard of review that the court of appeals will not disturb the judgment of the trial court when conflicting reasonable inferences may be drawn from the evidence or when there is no showing of clear error on the basis of the entire record. Rosenfield v. Kay Jewelry Stores, Inc., 10 Cir., 384 F.2d 98; Butler Paper Co. v. Business Forms, Ltd., 10 Cir., 424 F.2d 247. We do not find in the record any indication of "clear error" upon which we might base a reversal.
 
 III
 
 17
 Martin's third contention concerns adjustment for surface estate damage. Martin refers to Colorado cases which establish that
 
 
 18
 the rule of construction of a reservation of the minerals in a deed of conveyance is not to imply a right to injure or destroy the surface, unless the right to do so is made clear and expressed in terms so plain as to admit of no doubt. Evans Fuel Co. v. Leyda, 77 Colo. 356, 236 P. 1023; Smith v. Moore, Colo., 474 P.2d 794. See also Barker v. Mintz, 73 Colo. 262, 215 P. 534.
 
 
 19
 In Smith the question of security for surface damage was not presented but in Evans Fuel and in Barker reference is made to the Colorado statute governing security for protection against damage to the surface. In its present form this statute provides:
 
 
 20
 Security for mining under surface.-When the right to mine is in any case separate from the ownership or right of occupancy to the surface, the owner or rightful occupant of the surface may demand satisfactory security from the miner, and if it be refused may enjoin such miner from working until such security is given. The order for injunction shall fix the amount of bond. Colo.Rev.Stat.1963, Sec. 92-24-6.
 
 
 21
 Martin argues that any value of the mineral rights should be offset by the damage to the surface which mining would cause. The damage is equivalent to the value of the minerals, argues Martin, and the owner of the mineral rights should take nothing.
 
 
 22
 The Atchisons, on the other hand, point out that the trial court did give recognition to the appellant's ownership of the surface in the determination of the value of the gravel deposits. The record so indicates. By taking this value into account in determination of the value of the mineral rights, the court reached a result consistent with that intended by the security statute quoted above. This approach was that suggested by the Barker case, supra, where mineral extraction was allowed conditioned upon payment for the damage to the surface owner's estate.
 
 
 23
 Affirmed.
 
 
 
 *
 Of the Ninth Circuit sitting by designation