SKIVOLOCKI, APPELLANT and CROSS-APPELLEE, *v.* EAST OHIO
GAS COMPANY, APPELLEE and CROSS-APPELLANT.

(No. 73-632—Decided June 19, 1974.)

246

Messrs. *Sheppard & Agnew,* Mr. *John C. Sheppard* and Mr. *Alex J. Robertson,* for appellant and cross-appellee.

Messrs. *Kincaid, Micheli, Geyer & Ormond* and Mr. *R. William Geyer,* for appellee and cross-appellant.

STERN, J. This dispute centers about the respective rights of the parties, as those rights are traced to and defined by the 1901 mineral deed from Hawes to The National Coal Company. That deed reads, in pertinent part:

"* * * [I convey] all the coal in and under the following real estate, situated in the County of Guernsey in the state of Ohio * * *.

[Description of property omitted.]

" * * * Together with all necessary rights of way under said premises and through the coal aforesaid for the purpose of removing and shipping said coal and coal from adjacent lands, and the right to construct and maintain all necessary air shafts (Reserving and excepting however one acre in a square from under each dwelling, and under the school house, now on said lands.) and the right to lease and operate for oil and gas. *Moreover it is agreed that for any and all surface used by the grantee, its successors and assigns, it or they shall pay at the rate of fifty dollars per acre.* Hereby granting also to the grantee, its successors and assigns the right to use the shaft now on said premises as an air-shaft or manway for the benefit of

grantees coal workings in the coal fields of which said premises are a part." (Emphasis added.)

Appellant contends that the above-quoted language, and especially the emphasized portion thereof, either grants him the unqualified right to use the surface (except for those portions specifically excluded) in any manner, for $50 an acre, or at least constitutes a waiver of subjacent support for the surface owner. It is a well-known principle that contracts are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language. *State, ex rel. Maher, v. Baker* (1913), 88 Ohio St. 165, 102 N. E. 732; *Travelers Ins. Co. v. Buckeye Union Cas. Co.* (1961), 172 Ohio St. 507, 178 N. E. 2d 792; *Olmstead v. Lumbermens Mutl. Ins. Co.* (1970), 22 Ohio St. 2d 212, 259 N. E. 2d 123; 4 Williston on Contracts (3 Ed.), 303, Section 601.

Appellant suggests that we not be concerned with whether the right to employ strip mining, per se, is included in the deed, but rather direct our inquiry to the more general question of whether the parties intended the surface estate to be servient to the dominant mineral estate. This is the approach adopted by the Kentucky Court of Appeals in *Martin v. Kentucky Oak Mining Co.* (Ky. 1968), 429 S. W. 2d 395. There, the mineral grantee, under a 1905 "broad form" deed, had acquired the right to use the surface "as may be necessary or convenient to the exercise and enjoyment of the property rights and privileges hereby * * * conveyed." In addition, the grantor had explicitly waived any right to recover damages for injury to his surface estate caused by the grantee's coal mining operation. The Kentucky court, at page 397, stated:

"* * * Whether or not the parties actually contemplated strip or auger mining is not important—the question is whether they intended that the mineral owner's rights to use the surface in removal of the minerals would be superior to any competing right of the surface owner."

After observing that even customary deep mining would be destructive of the surface land due to accumulation of

slag and waste, and operation of tram roads, tipples and mine houses, the court concluded that the deed did show an intent that the mineral estate be dominant. The mineral grantee was judged to have acquired the right to strip mine for coal.

We are unable to accept the Kentucky court's approach. Instead of trying to ascertain the intent of the parties at the time the deed was drawn regarding the right to strip mine, our sister state has chosen to broaden the issue. It may well be true that thinking in terms of dominant and servient estates makes more manageable the inquiry into the right to strip mine. However, it is equally possible that such an approach will lead to a result which negates the real intent of the parties to the deed.

The trial court viewed the issue as whether "the defendant [East Ohio Gas] is entitled to the subjacent support for the surface use made of the land by it under its right-of-way." Although this approach comes much closer to dealing with the parties' actual intent, as expressed in the 1901 deed, it is not entirely satisfactory. The right to strip mine for coal and the right to subjacent support for a surface estate cannot co-exist, but that does not necessarily imply that they are co-equal rights. In other words, while a waiver of subjacent support is prerequisite to finding a right to strip mine, it is not per se conclusive of such a right. See *Rochez Bros.* v. *Duricka* (1953), 374 Pa. 262, 97 A. 2d 825; Note, Construction of Deeds Granting the Right to Strip Mine, 40 Cin. L. Rev. 304, 313 (1971); Note, The Common Law Rights to Subjacent Support and Surface Preservation, 38 Mo. L. Rev. 234, 249 (1973).

Underlying both the position taken by the Kentucky court, and that of the trial court in this case, is a valid assumption that strip mining for coal is a more modern, technologically advanced method to provide the mineral estate owner a fuller enjoyment of his property. Yet we cannot ignore the additional fact that strip mining, although similar to deep mining insofar as both represent a means to a legitimate end, necessarily and unavoidably causes

total disruption of the surface estate. Time-honored rules of law, meant to insure the mutual enjoyment of severed mineral and surface estates, cannot be blindly applied to resolve a question involving the right to strip mine. This is true, not because those rules lack present vitality, but because they are dependent upon presumptions wholly irrelevant to strip mining.[1]

The highest courts in two other coal-producing states have had occasion to construe mineral deeds. In *Stewart* v. *Chernicky* (1970), 439 Pa. 43, 46, 266 A. 2d 259, the Pennsylvania court faced the issue of whether the defendant coal company had ''the right to remove the coal under the land involved by the strip mining method without liability for injury to or destruction of the surface, regardless who owned that surface, or was such removal to be limited to shaft or deep mining?'' The answer to that question was found in a 1902 deed which severed the surface and mineral estates; more specifically, the court was concerned with the language which granted '' * * * the right of ingress, egress and regress over and through said lands for the purpose of mining, storing, manufacturing and removing said coal * * * also the right to drain and ventilate said mines by shafts or otherwise and to deposit the waste from said mines, and to build roads and structures * * *

---

[1]In addition to the example, previously alluded to, concerning the right to subjacent support, another legal principle which cannot be sensibly applied to strip mining is found in 54 American Jurisprudence 2d 389, Mines and Minerals, Section 210, as follows:

''* * * unless the language of the conveyance by which the minerals are acquired repels such construction, the mineral estate carries with it the right to use as much of the surface as may be reasonably necessary to reach and remove the minerals.'' See, also, 37 Ohio Jurisprudence 2d 18, Mines and Minerals, Section 14.

This implied right of the mineral owner is best explained as a practical attempt to insure that both he, and the surface owner, can enjoy their respective estates. To construe the "right to use" as including the right to strip mine would be to pervert the basic purpose of a principle designed to *mutually* accommodate the owner of the mineral estate and the owner of the surface estate in the enjoyment of their separate properties. See *Barker* v. *Mintz* (1923), 73 Colo. 262, 215 P. 534.

with a full release of and without liability for damages for injury to the surface, waters or otherwise arising from any of said operations."

Having determined that the deed contained no express intent concerning the method by which the coal might be mined, the Pennsylvania court, at page 49, quoted the following guidelines for construction which it had laid down in a previous decision:

" 'Where the language of a contract is contradictory, obscure, or ambiguous, or where its meaning is doubtful, so that it is susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, *while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes a rational and probable agreement must be preferred'\* \* \*.*"

Since strip mining involves serious disruption of the surface estate, the Pennsylvania court held that the burden was upon the coal company to affirmatively show that the parties intended that the coal might be removed by methods other than deep mining. A review of the language in the 1902 deed led the court to conclude, at page 52, that "the right to mine and remove coal by deeds conveying land *in language peculiarly applicable to underground mining* does not include the right to remove such coal by strip mining methods." (Emphasis added.)[2]

West Virginia has taken a similar stance. In *West Virginia-Pittsburgh Coal Co.* v. *Strong* (1947), 129 W. Va. 832, 42 S. E. 2d 46, plaintiff sought a judgment declaring that it had the right to strip mine for coal it owned. The 1904 deed relied upon was "broad form," and included a waiver of liability clause. After noting that mining rights were specifically granted in the deed, and that the express terms used served to restrict the rights given, the court, at page 836, stated:

" \* \* \* We are of the opinion, arrived at by reading

---

[2]The waiver of liability language in the deed was viewed as having reference only to such damage as might arise from deep mining.

the instrument as a whole, that it was the manifest intention of the parties to preserve intact the surface of the entire tract, subject to the use of the owner of the coal 'at convenient point or points' in order 'to mine, dig, excavate and remove all of said coal' by the usual method at that time known and accepted as common practice in Brooke County. We do not believe that this included the practice known as strip mining.''

The West Virginia court also explicitly rejected plaintiff's contention that ownership of the coal necessarily implies the right to remove it by strip mining, even though other methods may not be feasible.

In this case, the 1901 deed is coached in language peculiarly applicable to deep mining, and the evidence shows that the technique of strip mining was not known in Guernsey County until 1917. Appellant's argument concerning the effect of the $50 per acre charge for use of the surface estate is without merit. First, such a provision is not so novel as he implies in mineral deeds. See *Franklin* v. *Callicoat* (1954), 68 Ohio Law Abs. 67, 119 N. E. 2d 688; *West Virginia-Pittsburgh Coal Co.* v *Strong, supra*. Second, and more important, the right to ''use'' the surface cannot be reasonably construed as the right to destroy it.

In sum, then, we hold that the right to strip mine is not incident to ownership of a mineral estate. Because strip mining is totally incompatible with the enjoyment of a surface estate, a heavy burden rests upon the party seeking to demonstrate that such a right exists. This is especially true when the deed relied upon was executed prior to the time strip mining techniques became widely employed. Appellant has fallen short of meeting his burden of proof.

The second portion of the Court of Appeals' judgment permits appellant, on remand, to prove any damages arising out of appellee's interference with his surface rights (other than the right to strip mine). Appellee maintains that appellant has failed, at trial, to adduce any evidence of damage with regard to those surface rights, and concludes that a remand is unwarranted. Appellant replies

that the clear intent of the pre-trial agreement was to defer the necessity of expert testimony as to the amount of damages, until the respective rights of the parties had been adjudicated.

In our view, the stipulated facts in evidence[3] show that appellee's right-of-way unlawfully impinges upon appellant's rights, as described in the 1901 deed, to use the surface incident to deep mining operations, and to recover any oil or gas deposits. Thus we find appellant has suffered injury, and is entitled to be heard on the extent of damages flowing therefrom.

For the foregoing reasons the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, CORRIGAN, CELEBREZZE and W. BROWN, JJ., concur.

PAUL W. BROWN, J., concurring in part. I disagree that the appellant has suffered injury at this time by reason of appellee's pipe line and so conclude that a remand for trial of the damage question is unnecessary. Presently the evidence and stipulations show that only strip mining operations are contemplated. The sole issue before the trial judge was whether or not the inability to surface mine damaged the plaintiff. We agree with both the trial and appellate courts that East Ohio's claim to surface rights derives from the owner and is subservient only to such rights as plaintiff obtained as assignee of the National Coal Company under the 1901 deed from the owner. That deed expressly granted a right to use such surface as was necessary to remove the minerals granted, by deep mining.

---

[3]This evidence consisted of the various deeds held by the parties, and the 1901 deed with which we are primarily concerned. The conflict between appellee's right-of-way grant, and appellant's surface rights unrelated to strip mining, is apparent on the face of those instruments,

It set the price for such surface area, if needed, for shafts, air vents, access to transfer coal, and other concomitants of deep mining operations. It contemplated the use by the owner or his assignees of the surface as a separate estate until there was such a need. The ownership of the surface was absolute, subject only to the mineral owner's option to negotiate the necessity of dedicating a portion of the surface to his deep mining operation. This needed to be done in such a way as to be mutually accomodating to the owners of the mineral and surface estates, *Barker* v. *Mintz* (1923), 73 Colo. 262, 215 P. 534. Had a proper demand been made incidental to a deep mining operation, East Ohio may have had to fulfill this need for mutual accommodation, and with the owner of the fee might have had to negotiate the time and manner in which the theretofore legitimate use of the surface should terminate or be altered. No part of the language in the instrument justifies a conclusion that the optionee has an absolute right to enter and appropriate the surface without notice and negotiation with the owners of the surface of all matters other than acreage price, and payment of that price.

A claim for damages does not appear to me to have ripened, nor does it seem that this sort of damage action was contemplated by the parties at the trial of this cause.

The owners of the minerals made some showing at trial of damages such as the expense of a box cutting operation, of handling overburden twice, of cutting sluices under the gas line to properly drain the working area and of other such matters dealing with surface mining. Clearly this type of proof would be inconsistent with that part of the majority opinion with which I have specifically agreed.