DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal is from the December 12, 2006 judgment of the Ottawa County Court of Common Pleas, which granted an injunction to appellee, Richard G. Hart, Trustee, to prohibit appellant, Carmen M. Figueroa, from violating a deed restriction. Upon consideration of the assignments of error, we affirm the decision of the lower court. Figueroa asserts the following assignments of error on appeal: *Page 2 
 {¶ 2} "I. THE JUDGMENT OF THE TRIAL COURT THAT DEED LANGUAGE `AVERAGE SURFACE OF ADJOINING PREMISES' REFERS ONLY TO THE HEIGHT OF THE LAND AT THE ADJOINING POINT OF THE PREMISES IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 3} "II. THE JUDGMENT OF THE TRIAL COURT THAT THERE WAS NO EVIDENCE PRESENTED THAT APPELLEE'S BOAT IS IN VIOLATION OF THE DEED RESTRICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 4} Hart and Figueroa are adjoining lot owners in the Koontz Subdivision in Marblehead, Ohio. Hart sought an injunction against Figueroa to prevent her from maintaining a fence on her property that was higher than 42 inches because the height of the fence violated deed restrictions, interfered with Hart's waterfront view, and destroyed the value, use, and enjoyment of his property. Figueroa counterclaimed that Hart had violated a deed restriction by maintaining a dock/boat which extended beyond 12 feet from the shoreline. Figueroa's other claims were dismissed prior to trial.
 {¶ 5} The following evidence was submitted at trial.
 {¶ 6} Figueroa acquired her lot from Paul and Donna Stewart in 1995. The deed did not list any specific restrictions, but does indicate that title is taken "* * * subject to restrictions stated on said Plat and other restrictions that run with the land * * *." The Stewarts acquired their title in 1967 directly from Carl and Caroline Koontz, the original grantors who developed the subdivision. That deed specifically set forth the restriction *Page 3 
that "[N]o fence shall be erected higher than 42 inches above the average surface of adjoining premises."
 {¶ 7} The Koontzes acquired their property from Nan Saylor. Saylor had developed the Saylor Subdivision and sold various lots, reserved areas, lagoons, and common areas in several of the plats of the Saylor Subdivision to the Koontzes. The deed transferring title to the Koontzes granted the property subject to the restrictions set forth in the plat of the subdivision, which included a restriction regarding the height of fences. In an unrelated deed from Saylor to another lot owner regarding an individual lot within plat four of the Saylor Subdivision, the deed specifically indicated that the restrictions listed in the deed would expire after 40 years. The Koontzes' deed contained no such expiration. The Koontzes' deed also included a restriction that no boat dock and boat should extend into the lagoon more than 12 feet from the rear lot line. This restriction also did not include an expiration date.
 {¶ 8} Figueroa installed a 27-feet long fence along a portion of her lot which adjoins Hart's lot. The new fence was a part of landscaping changes Figueroa made to her property along with a major renovation of her home. Her zoning permit allowed a 30-foot fence with a gate, but a final eight-foot section and the gate has never been installed. Thomas Coughlin, Figueroa's husband, testified that he did not place the fence along the entire side property line because he was not able to determine how to complete the gate next to the garage. The fence is solid white plastic and is 69 1/2 inches high at one point and 75 inches high at the tallest point. *Page 4 
 {¶ 9} Coughlin testified that before he constructed the fence, he went to the zoning board to get approval. He checked his deed and the association's by-laws to see if there were any restrictions regarding the height of the fence. Later, when Hart complained, Coughlin checked earlier deeds and found the 42-inch limitation. However, he determined that the maximum height restriction, determined by the "average surface of adjoining premises," would require an averaging of the height of the buildings and anything else on the lot and adding 42 inches. He also investigated the restrictions placed in other deeds for the Saylor Subdivision and found that the restrictions also included an expiration date and he determined that the fence restriction expired in 1998 or 1999. Coughlin recalled minutes of a subdivision association meeting where the trustees were informed of a case in which such deed restrictions were found to have expired. The association determined that it would probably be impossible to get all of the lot owners to agree to imposing new restrictions.
 {¶ 10} The fence completely blocks Hart's view of the canal and lagoon. There are other fences between the lots in the subdivision. However, Mrs. Hart testified that she measured them, and none were taller than 42 inches from the ground.
 {¶ 11} Regarding Hart's dock, he testified that he has one fixed dock in the front of his house that is 32 feet in length and four feet wide. It was installed years before Hart purchased the property and was constructed in compliance with the restrictions of the Corps of Engineers. Erosion had changed the shoreline prior to Hart's purchase of the property. Therefore, the dock is now six-to-eight feet away from the shore. Since he has *Page 5 
purchased the property, erosion has not been an issue. Figueroa could place a dock in the front or back of her property, but chose to put one in front. Coughlin testified that Hart's boat is directly in front of Coughlin's front door and blocks the view of his dock.
 {¶ 12} The trial court held that the boat dock restriction found in the Saylor Plat restrictions was applicable to Hart. However, because there was no evidence of the length of the dock and boat, the court concluded that appellant had failed to establish a violation of the restriction.
 {¶ 13} With respect to the fence restriction, the court held that there was no expiration date in the Figueroa's deed regarding the fence restriction. Furthermore, the expiration language found in some of the Saylor deeds did not apply to the Koontz subdivision lots because no expiration date was set forth in the Koontzes' deeds. The court reasoned that the Koontzes could not have intended to mirror the Saylor restrictions (including the expiration date) since they did not include an expiration date and the restriction in the Saylor deeds did not include a height restriction. The court further found that the term "premises" as used in the restriction was unambiguous and clearly means the average height of the land of the adjoining lot line. The court found the average ground height of Hart's lot to be 577.64 feet and, therefore, the fence could not be more than 42.28-inches high at the highest point of the slope of the fence line.
 {¶ 14} The trial court granted Hart's request for a permanent injunction against Figueroa maintaining a fence higher than 42.19 inches from the ground. The trial court dismissed the counterclaim of Figueroa because she had failed to present any evidence in *Page 6 
support of the claim of a violation of a deed restriction. Figueroa sought an appeal to this court.
 {¶ 15} Figueroa argues in her first assignment of error that the trial court erred in its finding that the ordinary meaning of the language of the deed, "average surface of adjoining premises" is the average elevation height along the fence line and not an average of the lot elevation. Figueroa agrees that the language is unambiguous, but argues that the trial court's finding of the ordinary meaning was contrary to the manifest weight of the evidence.
 {¶ 16} The primary purpose in construing an instrument is to ascertain the intent of the parties. Skivolocki v. E. Ohio Gas Co. (1974),38 Ohio St.2d 244, paragraph one of the syllabus and Graham v. Drylock CoalCompany (1996), 76 Ohio St.3d 311, 313. When the terms of the instrument are clear and unambiguous, the court must construe the language as it is written. Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph two of the syllabus. We presume that the parties intend the ordinary meaning of the language they chose to use in their agreement.Kelly v. Med. Life Ins. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus.
 {¶ 17} Figueroa attempts to argue in this case that there is more than one ordinary meaning to the phrase "average surface of adjoining premises." We disagree. Under the meaning advanced by Figueroa and rejected by the trial court, the average elevation of the entire surface of the two adjoining lots must be determined to calculate the maximum height of the fence. As a result, Figueroa could construct a fence that is 52 inches high. *Page 7 
Applying the meaning adopted by the trial court (an average of the elevations along the lot line) results in a maximum fence height of approximately 45 inches.
 {¶ 18} Clearly, using the average elevation of the land along the lot line results in fences of a more consistent height within the subdivision than would averaging the entire surface elevation of the lots. Furthermore, for practical reasons alone, we find that it is not plausible that any grantor would require that the grantee average the elevations of the surrounding lots in order to install a fence. Therefore, we conclude that the trial court properly determined the ordinary meaning of the phrase, "average surface of adjoining premises" as the average of the elevation of the land along the adjoining lot line.
 {¶ 19} Figueroa also argues that even if the trial court did not err in its construction of the deed, it did err in its calculation of the maximum height permitted for appellant's fence. We agree that the trial court made a mathematical error.
 {¶ 20} The surveyor determined the highest elevation along the fence line to be 577.85 feet, the lowest elevation to be 577.38 feet. An average of those two numbers results in an average elevation of 577.615. However, an average of the ten elevations noted by the surveyor along the lot line results in an average elevation of 577.64 feet. The surveyor's average surface height of the lot line was listed as 577.64 feet on one statement and 577.66 feet on another. However, the trial court accepted 577.64 feet as the average elevation and then made a mathematical error in computing the maximum height of the fence when converting feet to inches. *Page 8 
 {¶ 21} Applying the trial court's finding as to the average surface height along the lot line, we can determine the judgment that the trial court should have entered. Adding 3.5 feet (or 42 inches) to arrive at a maximum fence height of 42 inches, the top of the fence line would be leveled at an elevation of 581.14 feet. Therefore, the fence height would be 3.76 feet at the lowest level (45.12 inches) (581.14 feet less 577.38 feet) and 3.29 feet (39.48 inches) (581.16 feet less 577.85) at the highest level.
 {¶ 22} Figueroa's first assignment of error is found well-taken in part and not well-taken in part.
 {¶ 23} In her second assignment of error, Figueroa argues that the trial court's finding that there was no evidence that Hart's boat and dock violated the deed restriction was contrary to the manifest weight of the evidence.
 {¶ 24} Hart testified that his fixed dock sits six-to-eight feet from the shoreline due to erosion that occurred prior to his purchase of the property. The dock was installed in compliance with the restrictions of the Corps of Engineers. Hart also testified that the dock was about four feet wide. He further testified that his boat is 27 feet long and has an eight-foot beam. Figueroa testified that Hart's estimations seemed visually accurate.
 {¶ 25} Based upon this testimony, Figueroa contends that there was evidence that the boat and dock extend 18 feet from the shoreline. On appeal, Hart argues that the dock was built prior to Figueroa's purchase of the lot and she is not damaged by Hart's continued use of the dock. *Page 9 
 {¶ 26} We find that the trial court's finding that there was no evidence to support a finding that dock and boat extend more than 12 feet from the shoreline is contrary to the manifest weight of the evidence. Hart testified as to the factual issues necessary to determine whether a violation of the restriction occurred. Figueroa confirmed those facts.
 {¶ 27} Appellant's second assignment of error is well-taken.
 {¶ 28} Having found that the trial court did commit error prejudicial to Figueroa, the judgment of the Ottawa County Court of Common Pleas is affirmed in part and reversed in part. This case is affirmed insofar as the trial court found that the ordinary meaning of the deed restriction phrase, "average surface of adjoining premises" is the average of the elevation of the land along the adjoining lot line. The trial court's decision is reversed with respect to its calculation of the maximum height of the fence, and we hereby enter the judgment that the trial court should have entered regarding the actual maximum height of fence permitted, which is 45.12 inches. This case is remanded to the trial court for redetermination of whether Hart's dock and boat violated his deed restriction. Appellant and appellee are ordered to share the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Ottawa County.
 JUDGMENT AFFIRMED IN PART AND REVERSED IN PART. *Page 10 
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Arlene Singer, J., Thomas J. Osowik, J., Concur. *Page 1