# UNITED STATES *v.* BUFFALO NATURAL GAS FUEL COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 64.  Submitted December 2, 1898. — Decided January 3, 1899.

Under the tariff act of October 1, 1890, natural gas is entitled to be admitted free of duty.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Hoyt* for the United States.

*Mr. Herbert P. Bissell* for the Buffalo Natural Gas Fuel Company.

MR. JUSTICE PECKHAM delivered the opinion of the court.

The defendant gas company, doing business at Buffalo, in the State of New York, imports natural gas from the Dominion of Canada, for the purpose of supplying its customers with that article. The gas is brought in pipes under the Niagara River, and is used for consumption as fuel and for illuminating purposes.

In 1893 the gas imported by the company was assessed for duty by the collector of the port of Buffalo as a non-enumerated unmanufactured article, at ten per cent, under section 4 of the tariff act of October 1, 1890, c. 1244, 26 Stat. 567, at p. 613.

The importers claimed that the gas was entitled to free entry under section 2 of the above act, providing for a free list, either under paragraph 496, (p. 604,) as crude bitumen, or under paragraph 651, (p. 607,) as a crude mineral, not advanced in value or condition by refining or grinding, or by any other process of manufacture, not specially provided for

in the act. The importers made proper protest, and obtained a review of the decision of the collector by the board of general appraisers. That board, on a second hearing, after testimony had been given as to the character of the gas, decided that natural gas was a crude mineral, and the board on that ground sustained the claim that it was exempt from duty under paragraph 651 of the tariff act of 1890.

The Circuit Court affirmed that decision, and upon a review by the Circuit Court of Appeals for the Second Circuit, 45 U. S. App. 345, the decision was again affirmed. The latter court, by Circuit Judge Lacombe, said : " We do not undertake in this case to decide whether or not natural gas is a ' crude bitumen.' If it be such, the provisions of paragraph 496 would control its classification, being more specific than those of paragraph 651. Both paragraphs are in the free list, and since natural gas comes fairly within the general provision for crude minerals, and is therefore free, it is unnecessary now to inquire whether it is also within the more specific description ' crude bitumen,' which is also free. The board of general appraisers properly reversed the collector's assessment of the article for duty ; it is not a ' raw or unmanufactured article not enumerated.' "

Circuit Judge Wallace, while concurring in the affirmance of the decision of the Circuit Court, was of the opinion that the importation in controversy ought to be classified under paragraph 496 as crude bitumen, and exempt from duty on that ground.

The decision having been duly entered, this court upon the petition of the Government issued a writ of certiorari, and the case has been brought here for review.

We are of opinion that the Circuit Court of Appeals was right in its disposition of the case. The substance that is taken from the bosom of the earth and which burns brightly without any further labor put upon it, is popularly designated as natural gas. This name is not contained in the tariff act, but there are two paragraphs thereof which it is claimed do properly and sufficiently characterize and embrace natural gas, and they are in the free list, and are known as paragraphs 496

and 651. The language used in each, when taken in its popular and commonly received sense, or according to the sense in which it is used commercially, would cover and include the substance generally spoken of and loosely described as natural gas. The fact that it is not thus named in the act compelled the collector to assess it as a raw or unmanufactured article not enumerated, a description which does not fit nearly so well as that which is contained in each of the paragraphs mentioned above. We think the evidence shows that natural gas is included in the language of one or both of those paragraphs.

The rule is familiar that in the interpretation of laws relating to the revenues the words are to be taken in their commonly received and popular sense, or according to their commercial designation, if that differs from the ordinary understanding of the word. *Two Hundred Chests of Tea, Smith, Claimant,* 9 Wheat. 430.

Mr. Justice Story, in that case, in delivering the opinion of the court, said: "The object of the duty laws is to raise revenue, and for this purpose to class substances according to the general usage and known denominations of trade. Whether a particular article were designated by one name or another in the country of its origin, or whether it were a simple or mixed substance, was of no importance in the view of the legislature. It did not suppose our merchants to be naturalists, or geologists, or botanists. It applied its attention to the description of articles as they derived their appellations in our own markets, in our domestic as well as our foreign traffic." See also *Lutz* v. *Magone,* 153 U. S. 105, and cases there cited.

Prior to 1890 natural gas had not been imported, although its existence in this country and in foreign countries was well known. After the passage of the tariff act of 1890, this corporation commenced its importation from Canada as stated. It appeared in the evidence that an analysis of the gas thus imported had been made by competent chemists, and it was found to contain methane, or marsh gas, to the extent of 95.6 per cent, the balance being made up principally of hydrocarbons other than methane.

In the opinion of some of the witnesses the natural gas thus

examined was a crude bitumen. It was stated "that bitumens are mixtures of hydrocarbons of various kinds, mixed with other materials in varying proportions; a crude bitumen as found in nature is mixed with other materials." It was also testified that this natural gas contains 97.2 per cent of natural hydrocarbon, and the balance of 2.8 per cent is composed of substances usually found with the hydrocarbons in crude bitumen; that the term "bitumen" does not refer to any substance of definite chemical composition, but is distinctively a generic term applied to a large number of natural substances which consist largely or chiefly of hydrocarbons. These substances may be gaseous, as natural gas or marsh gas; fluid, as petroleum or naphtha; viscous, as the semifluid asphaltum; elastic, as elaeterite, found in Utah and elsewhere; solid, as some forms of asphaltum, bituminous or anthracite coal; that the common compositions of crude bitumen are naturally classified as above stated. The deposits of bitumen occur in various portions of the earth's crust; they differ naturally in appearance, in consistency, in various physical and chemical properties; but they are everywhere found to consist essentially of hydrocarbons, and they are correctly designated as crude bitumens. That natural gas should be designated as a crude bitumen was the opinion of some of the witnesses.

Evidence on the part of the Government was given by witnesses who were connected with the Government Geological Survey, and their evidence would tend to show that the word "minerals" in the mineralogical sense of the word almost invariably refers to solids; that in the mineralogical definition gases would not be included, but that there was a wider definition, which according to some authorities includes all the constituents of the earth's crust, and that would include gases. It was also stated that if a scientific man wants to be precise he confines his use of the term "mineral" to a certain homogeneous substance, a chemical entity, having a definite composition, just as the mineralogist does. But nevertheless minerals are both solids and liquid, according to most definitions, and that some authorities include gases among minerals and others exclude them.

One witness for the Government said if you exclude from the mineral kingdom the gases included in the atmosphere, you must set up some fourth class of substances; the division being, generally, the vegetable kingdom, the animal kingdom and the mineral kingdom; but no such fourth division is ordinarily designated, and the constituents of the atmosphere are not vegetable and they are not animal, and ordinarily they are included in the mineral kingdom.

We think the evidence in this case shows that, within the language of paragraph 651 of the act of Congress, interpreting that language in accordance with the rule above mentioned, natural gas would fairly come under the head of a crude mineral, if there were no more limited classification in the act; but that the classification as crude bitumen is more limited, and we are of opinion that, upon the evidence, natural gas is properly thus described. If it be within the more specific classification, it would be controlled thereby. It is not important in this case to conclusively decide which classification covers it, because both are on the free list. As the gas is described in one or both of the paragraphs, it cannot come under section 4 of the act, which provides for the levy, collection and payment on the importation of all raw or unmanufactured articles, not enumerated or provided for in the act, a duty of ten per centum *ad valorem.*

The judgment of the Circuit Court of the United States for the Northern District of New York was right, and should be

*Affirmed.*