No. 17,170.

Farrell *v.* Sayre et al.

(270 P. [2d] 190)

Decided May 3, 1954.   Rehearing denied May 17, 1954.

Mr. Louis I. Hart, Jr., Mr. D. W. Strickland, Jr., Mr. J. R. Strickland, Mr. Richard Tull, for plaintiff in error.

Messrs. Kelly & Clayton, Mr. Leroy J. Williams, for defendants in error.

*En Banc.*

Mr. Justice Holland delivered the opinion of the court.

On June 25, 1940, defendant in error Sayre gave a special warranty deed to one Carleno in conveyance on the surface rights in and to 240 acres of land in Gilpin county, Colorado, more particularly described as the SE ¼, the SE ¼ of the NE ¼ and the SE¼ of the SW ¼ of section 32, township 1, S.R. 72 W. of the 6th P.M. This deed contained the following reservation: "* * * and excepting and reserving all mineral and mineral rights and rights to enter upon the surface of the land and extract the same * * *."

This deed was recorded October 25, 1941, and on that day Carleno quitclaimed his interest by a deed to plaintiff in error Farrell. It is admitted that the entire surface of the property described in the deed consists of sand and gravel; that Sayre never had conducted any gravel operations on the land; that at the time he gave the Carleno deed, the gravel had no commercial value; and that he did not contemplate any use of the sand and gravel at that time. However, prior to the issuance of the Carleno deed, there had been a gold placer operation on some of the land from which Sayre had received substantial royalties.

In 1943, plaintiff Farrell, having had previous business negotiations with the Denver and Salt Lake Railroad Company, interested said company in acquiring gravel from the land to be used as ballast on their roadbed. A

portion of section 32 and sections 28 and 33, which was on a creek bed, had been torn up in the placer operations, and was known as the "Pactolus Placer." The railroad company agreed to take the gravel, but was concerned about the mineral reservation hereinabove set out and suggested that Farrell contact defendant Sayre relative thereto. When contacted, Sayre said, "You can't sell the gravel unless you get a contract from me, a release from me." Farrell then asked, "Will you give me a lease on all the Douglas (Pactolus) property?" Sayre said, "Yes." Sayre then gave him the lease knowing that the railroad company was to take the gravel. This lease, referred to in the hearing as the "Pactolus Agreement," was drafted at Sayre's directions and is as follows:

"Agreement

"Between Robert H. Sayre, The Colorado National Bank, Lucy I. Harrington, and Lawrence C. Farrell.

"This Agreement, made this 19th day of May, 1943, between Robert H. Sayre, The Colorado National Bank, Lucy I. Harrington, parties of the first part, and Lawrence C. Farrell, party of the second part.

"Witnesseth: That the said Robert H. Sayre, The Colorado National Bank, Lucy I. Harrington, Parties of the first part, owners of mineral rights in certain lands, grants and warrants to Lawrence C. Farrell, Party of the second part, the right to remove and sell gravel material and the right of entrance with track and crusher plant upon the following described premises:

"All said certain lands in Sections 28, 32, and 33, Township 1 South, Range 72 West, of the 6th P.M. whereon placer operations have been performed.

"That the said Lawrence C. Farrell, party of the second part, agrees to pay said parties of the first part one cent (1¢) per cubic yard for gravel removed. Payments to be made on quantities as measured by reputable engineer of party of the second part.

"In Witness Whereof the parties hereto have executed

this agreement, the day and year first above written.

| | |
|---|---|
| | Robert H. Sayre |
| Parties of the First Part | The Colorado National Bank, |
| | Denver, Colorado |
| | Geo. Klein |
| "Witness: | Lucy I. Harrington |
| Lawrence C. Farrell | L. C. Farrell |
| Witness: | Party of the Second Part" |

Farrell then assigned his rights to the railroad company, which took possession of the premises and extended the track thereon, which was almost entirely on that part of section 32 covered by the Carleno deed. By this operation the railroad company removed 156,586 cubic yards of gravel in the years from 1943 to 1949, and defendant Sayre accepted royalties therefor from the company and never objected to Farrell's assignment to the railroad company. These gravel rights, exercised by the railroad company, were conveyed to assignees of plaintiff Farrell. During the operations defendant's secretary, upon learning that the railroad company was paying a royalty to plaintiff, attempted to have a mutual cancellation of the lease, which Farrell refused, but increased his royalty to defendant Sayre by one cent per cubic yard. In 1949, when the railroad company ceased its gravel operations on the land, plaintiff Farrell sought another market for the gravel, particularly the Public Service Company of Colorado, for use in refacing a dam in that territory; negotiations were entered into; and defendant Sayre attempted to revoke the so-called "Pactolus Agreement," herein set out, by a simple notice to that effect.

The trial court held that plaintiff Farrell's assignment for the Public Service Company negotiations without the consent of Sayre ordinarily would terminate the provisions of the agreement, since the latter never was anything more than a mere license.

The present action originated by Farrell filing a complaint for declaratory judgment adjudicating the rights

of the parties to the action, which involved all of defendants in error here as they appeared in the trial court, and particularly the rights of the parties in and to the sand and gravel contained on and in the premises described, being the described land conveyed originally by the Carleno deed.

The trial court held that the sand and gravel were minerals within the meaning of the reservation clause, and to this holding error is assigned, as well as to the finding of the court which gave such an effect to the reservation clause as was totally repugnant to, and inconsistent with, the grant.

A most unusual situation is here presented. Some of the area involved is placer ground; however, it is admitted that the entire surface of the area conveyed by the original deed is nothing but sand and gravel. The mineral reservation here involved is in general terms and does not expressly include sand and gravel. It seems to be the general rule that where the surface of land is sand and gravel, a straight mineral reservation does not include the sand and gravel, and where a similiar situation has arisen, the cases turn upon the intent of the parties at the time of the execution of the deed containing the reservation, when such reservation is in general terms, and virtually every decision is to the effect that where the grant in the deed, as here, is nothing but sand and gravel, it surely was not contemplated that the parties intended to nullify the grant without some direct specification in the reservation. It is to be noted that at the time of the making of the so-called Carleno deed, defendant Sayre did not have any thought of the sand and gravel having commercial value as such.

It is apparent that the trial court in considering the question of the intent of the parties at the time of making the deed with its reservation, considered certain acts of the plaintiff, Farrell, who was not a party to that deed, and apparently it was influenced by certain other

acts on the part of Farrell in connection with the various transactions, especially in agreeing to pay one cent, and later two cents, royalty on the gravel as recognition of defendant Sayre's rights.

We might conclude this opinion by saying that if the contentions of defendant Sayre and the findings of the trial court were to be upheld, it is tantamount to saying that originally, by the Carleno deed, Sayre retained all that he granted thereby; that the deed served no useful purpose; and the grantee received nothing.

The trial court was led afield and away from the original grant by the side transactions that followed, and without further discussion of the details of these transactions, we believe that the ruling in the case of *Waring v. Foden,* 86 A.L.R. 969, 979, is controlling here and therein we find the following appropriate language: "The two main principles to be gathered from these pronouncements are, first, that the word 'minerals' when found in a reservation out of a grant of land means substances exceptional in use, in value and in character * * * and does not mean the ordinary soil of the district which if reserved would practically swallow up the grant * * *; and secondly, that in deciding whether or not in a particular case exceptional substances are 'minerals' the true test is what that word means in the vernacular of the mining world, the commercial world and landowners at the time of the grant, and whether the particular substance was so regarded as a mineral * * *."

It is abundantly clear from the record in this case that at the time of making the Carleno deed, defendant Sayre, as grantor, had no intention of reserving to himself that which he had granted, namely, the sand and gravel surface of the land.

It is our determination from the record in this case that the rights of all parties involved are distinctly fixed by the original deed and the reservation therein. It follows that the judgment of the trial court is reversed and the cause remanded with directions to enter such

declaratory judgment as to the rights of all parties interested as such rights may stem from our interpretation of the original grant.