G. Todd McCORMICK, Maura C. McCormick, Paul Hoshiko, Jean Hoshiko, Sylva Kunzman, Glen P. Rouse, Peg M. Wykes and Ritchey Land & Cattle Co., Inc., a Colorado corporation, Petitioners,

v.

UNION PACIFIC RESOURCES COMPANY, a Delaware corporation; Snyder Oil Corporation, a Delaware corporation; Amoco Production Company, a Delaware corporation; Elk Exploration, Inc., a California corporation; L. Alice Collister; Damson Investment Group, Inc., a Delaware corporation; Farmers Independent Ditch Company, a Colorado not-for-profit corporation; Betty Wise Guida; HS Resources, Inc., a Delaware corporation; B. Brian Neary; Soco Wattenberg Corporation, a Delaware corporation; Union Pacific Land Resources Company, a Nebraska corporation; Michael Youel, and all unknown persons who claim an interest in the subject matter of this action, Respondents.

No. 99SC243.

Supreme Court of Colorado, En Banc.

Nov. 28, 2000.

As Modified Dec. 14, 2000.

Carpenter & Klatskin, PC, Willis V. Carpenter, Max Minnig, Jr. & Associates, LLC, Max A. Minnig, Jr., Denver, for Petitioners.

Covington & Burling, Russell H. Carpenter, Jr., J. Michael Hemmer, David M. Grable, Washington, D.C., Welborn, Sullivan, Meck & Tooley, P.C., John F. Welborn, Keith D. Tooley, Denver, for Respondent Union Pacific Resources Company.

Clanahan, Tanner, Downing and Knowlton, P.C., Michael J. Wozniak, Denver, for Respondents Snyder Oil Corporation, Damson Investment Group, Inc. and Soco Wattenberg Corporation.

Deisch and Marion, P.C., Timothy F. Marion, Michael R. Smith, Denver, for Respondent Amoco Production Company.

Welborn, Sullivan, Meck & Tooley, P.C., Keith D. Tooley, Denver, for Respondents Elk Exploration, Inc. and HS Resources, Inc.

Justice HOBBS delivered the Opinion of the Court.

The question we answer in this case is whether Colorado follows the majority rule that a deed reservation for "other minerals" reserves oil and gas. We conclude that it does. Accordingly, we affirm the judgment of the court of appeals. *See McCormick v. Union Pac. R.R. Co.*, 983 P.2d 84 (Colo.App. 1999).

## I.

In this quiet title action filed in 1994, Plaintiffs ("Landowners") and Defendant, Union Pacific Resources Company ("UPRC"), are successors in interest to deeds executed between 1906 and 1909 involving grants of defendant Union Pacific Railroad Company ("Railroad"). The five

properties at issue are located in Weld County. The deed reservations for three of the properties reserved "all coal and other minerals within or underlying said lands." The Landowners of these three properties alleged in their amended complaint that UPRC "improperly claimed the oil and gas in, under and associated with" these properties. The deed reservations for the other two properties reserved "all oil, coal and other minerals within or underlying said lands." The Landowners of these two properties alleged that UPRC has "improperly claimed the gas in, under and associated with" those properties.

In the context of UPRC's summary judgment motion, Landowners sought a trial to determine the meaning of these reservations, claiming that failure to specify the reservation of oil and gas, as to three of the properties, and gas, as to two of the properties, demonstrated intent by the Railroad not to include them. They further argued that oil and gas production was not generally occurring in this vicinity of Colorado at the time of the deeds; hence, the parties did not contemplate the reservation of these substances unless so specified. Finally, they pointed to the Railroad's various formulations of deed reservation language in other deeds at the close of the nineteenth century and early twentieth century—first reserving coal and other minerals, later coal, oil and other minerals, and still later, coal, oil, gas, and other minerals. They argued that this progressive insertion of particular substances in the deed reservation language indicated the Railroad's prior intent not to include them until specified.

Landowners characterized this evidence as "extrinsic" evidence warranting trial on the issue of the intent of the parties to the particular deeds. They argued that the term "other minerals" is inherently ambiguous, therefore requiring trial. UPRC contended that the issue was one of law, requiring no trial, because oil and gas are subsurface substances that are included in a deed reservation for "other minerals" as a matter of law.

In granting UPRC's summary judgment motion, the trial court ruled that the term "other minerals" is unambiguous and includes all subsurface valuable substances. On appeal, Landowners argued that the trial court erred in refusing to take extrinsic evidence. Based on its review of Colorado law and the precedent of other jurisdictions, the court of appeals held that the deed term "other minerals" unambiguously includes oil and gas and restricted the scope of the trial court's order to those substances.

■ We agree with the court of appeals that the term "other minerals" in a deed reservation in Colorado has the settled meaning of including oil and gas. We also agree with the court of appeals' judgment restricting the effect of the trial court's declaratory judgment to oil and gas. Despite the broad wording of the certiorari issue, oil and gas were the only substances actually in dispute between the parties regarding these five properties. The issue petitioners stated on certiorari is:

> Whether, in a case of admitted first impression, the court of appeals erred in determining that (i) the term "minerals" used in a general deed reservation is unambiguous as a matter of law, thereby excluding any extrinsic evidence of the parties' intent; and (ii) "minerals" includes, as a matter of law, all oil, gas and valuable subsurface substances.

We do not render advisory opinions on certiorari; hence, we do not address whether the railroad deeds in this case reserve minerals other than oil and gas.

## II.

■ We hold that Colorado adheres to the majority rule that the deed reservation language "other minerals" reserves oil and gas.

### A.

### *The Oil and Gas Mineral Reservation Majority Rule*

■ We review the trial court's grant of the Railroad's and UPRC's motion for summary judgment under C.R.C.P. 56. Under this rule, a motion for summary judgment should be granted when there are no genuine issues as to any material fact and the moving party is entitled to a judgment as a matter of law. C.R.C.P. 56(c); *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 83

(Colo.1999). While the moving party has the initial burden to show that there is no genuine issue as to any material fact, once that initial burden is met, the burden shifts to the nonmoving party to establish that there is a triable issue of fact. *Greenwood Trust v. Conley*, 938 P.2d 1141, 1149 (Colo.1997).

■ A reservation is a vehicle by which a grantor creates and reserves to the grantor some right or interest in the estate conveyed, which interest had no previous existence. *See Lincoln Sav. & Loan Ass'n v. State*, 768 P.2d 733, 735 (Colo.App.1988). The grantor may reserve a wide variety of interests, such as easements, profits, timber, water rights, or mineral rights. As one commentator notes: "[T]he grantor conveys away an estate and receives back, in the classic metaphor of property law, one of the sticks in the bundle of ownership." 9 *Thompson on Real Property Law* § 82.09, at 596 (David A. Thomas ed., 1994).

■ The reservation of a mineral estate necessarily severs it from the surface estate, creating multiple estates in the same land. *See Smith v. Moore*, 172 Colo. 440, 441–43, 474 P.2d 794, 795 (1970) (holding that mineral estate owner owed a duty of surface support); *Mitchell v. Espinosa*, 125 Colo. 267, 273–74, 243 P.2d 412, 413 (1952) (holding that the habendum clause of the deed created a reservation for oil and gas); *Calvat v. Juhan*, 119 Colo. 561, 566, 206 P.2d 600, 603 (1949) (holding that a reservation of oil, gas, and mineral rights precluded possession of the severed mineral estate by the surface possessor); cf. *Radke v. Union Pac. R.R. Co.*, 138 Colo. 189, 209, 334 P.2d 1077, 1087 (1958) (holding that language referring to prospecting did not reserve a mineral interest).

The word "mineral" can be used in different senses, depending upon the context. For example, "the scientific division of all matter into the animal, vegetable or mineral kingdom[s] would be absurd as applied to a grant of lands, since all lands belong to the mineral kingdom[,]" and, thus, could not be excepted from the grant without being destructive of it. *Watt v. Western Nuclear, Inc.*, 462 U.S. 36, 43, 103 S.Ct. 2218, 2223, 76 L.Ed.2d 400, 407 (1983). Thus, the term "minerals" "is not capable of a definition of universal application." Lin Patterson, *A Survey of Problems Associated with Ascertaining the Ownership of "Other Minerals"*, 25 Rocky Mtn. Min. L. Inst. 21–1, 21–8 (1980).

We uphold the trial court's determination that summary judgment was appropriate in this case. Although the term "minerals" is not inherently unambiguous and extrinsic evidence may be required to ascertain the parties' intent in certain circumstances, our study of Colorado legal precedent, custom, and usage convinces us that Colorado adheres to the majority rule that deed reservation language reserving "other minerals" reserves oil and gas. Leading Colorado commentators are in agreement:

> Barring the unusual case where ambiguities exist in the language of [a] grant or reservation and parol evidence is allowed to prove what was really intended in a given conveyance, the law is basically settled.... Now, almost universally in mineral-producing jurisdictions, including Colorado, minerals can be separated and severed from surface ownership. Barring other factors, most courts today will hold or have held that a general grant or reservation of "minerals" or of "all minerals" will be inclusive of oil and gas and all constituent hydrocarbons. Generally, too, a grant or reservation of "oil and gas" will include all associated hydrocarbons and probably at least some non-hydrocarbons that are normally produced as part of the oil and gas stream.

Phillip G. Dufford, "Conveying Oil and Gas Interests" in Cathy Stricklin Krendl, 1B *Colorado Methods of Practice* § 10.1 at 9–10 (1997).

> An interesting question is presented under the Stock Raising Homestead Act, or other acts containing similar mineral reservation language, as to just what substances are to be classified as "minerals" under a reservation of "all the coal and other minerals." It appears to be settled law that those words are adequate to reserve oil, gas, and related hydrocarbons.

Willis V. Carpenter, "Severed Minerals as a Deterrent to Land Development" in John S. Lowe, Phillip G. Dufford, Clyde O. Martz,

*Colorado Oil & Gas Law and Land Practices* 481 (1982); *see also* 1 Howard R. Williams & Charles J. Myers, *Oil and Gas Law* § 219.1 at 274.12 (1999); Richard W. Hemingway, *The Law of Oil and Gas* § 1.1 at 1 (2d ed.1983). Carpenter adds that the inclusion of substances other than oil and gas within the deed reservation language "other minerals" is not so settled:

> There is no such settled law, however, with respect to sand and gravel, deposits of clay, and similar nonmetallic materials which, being neither animal nor vegetable, in layman's terms can only be classified as "mineral" in character.

Carpenter, *supra*, at 481.

These commentaries by distinguished professors and practitioners—written for the education and guidance of Colorado's legal profession, oil and gas industry, and landowners—accurately reflect our state's legal precedent, custom, and usage.

As to oil and gas, through an 1887 statute, the General Assembly recognized that oil and gas were valuable substances and classified both of them as "minerals" when it authorized the Board of Land Commissioners to enter into leases for their production.[1] The Assembly provided:

> If stone, coal, *coal oil, gas, or other mineral not herein mentioned,* be found upon the State land, such land may be leased for the purpose of obtaining therefrom the stone, coal, *coal oil, gas, or other mineral,* for such length of time, and conditioned upon the payment to the State Board of such royalty upon the product as the State Board of Land Commissioners may determine.

1887 Colo. Sess. Laws 328, 331 (H.B.107, Sec.8) (emphasis added).

At the time of this enactment, the state held title to sections sixteen and thirty-six of every township, or lands in lieu thereof, under the enabling act for statehood. *See* Enabling Act § 7, 1 C.R.S. (2000) at 27; Act of Congress March 3, 1875, ch. 139, 18 pt. 3

Stat. 474, 475 (1875). By 1887, Colorado's legislative branch expressed a policy of leasing the oil and gas resource under state-owned lands in return for royalty payments for the benefit of the school fund. The State Board of Land Commissioners had trust responsibility for realizing value from the state's landowner status in this regard. *See* Colo. Const. art. IX, § 9. The Assembly's action in authorizing the Land Board to lease oil and gas interests necessarily recognized both the exceptional nature of these substances and their status as "minerals." *See* 1903 Colo. Sess. Laws, ch. 151, § 2 at 384 (assigning mineral superintendent the duty to inspect works producing "oil or other mineral product" under state leases); 1907 Colo. Sess.Laws, ch. 78, § 2(1) at 168 (assigning State Geological Survey the responsibility to study geologic formations for "economic mineral resources" including "oil and gas . . . and other mineral substances").

Congress followed suit later in the nineteenth century. The Oil Placer Act of 1897 made oil and gas "unequivocally subject to the Mining Law." *See* John D. Leshy, *The Mining Law* 91 (1987). In *Northern Pac. Ry. Co. v. Soderberg,* 188 U.S. 526, 534, 536–37, 23 S.Ct. 365, 368–69, 47 L.Ed. 575, 583–84 (1903), the Supreme Court concluded that oil and gas are valuable minerals in the context of commercial production. *See also Cherokee Nation v. Hitchcock,* 187 U.S. 294, 302–304, 23 S.Ct. 115, 118, 47 L.Ed. 183, 188–89 (1902) (recognizing that as early as 1898, oil was considered a commercially important mineral); *Ohio Oil Co. v. Indiana,* 177 U.S. 190, 204, 20 S.Ct. 576, 44 L.Ed. 729, 737 (1900) (determining that oil and gas are "minerals ferae naturae"); *United States v. Buffalo Natural Gas Fuel Co.,* 172 U.S. 339, 343, 19 S.Ct. 200, 201, 43 L.Ed. 469, 471 (1899) (stating that "natural gas would fairly come under the head of a crude mineral"). Ultimately, Congress made oil and gas subject to the

---

1. In March 1862, the second oldest production of oil in the United States commenced at the Florence Field, near Florence, Colorado. *See* Blakely M. Murphy, *Conservation of Oil and Gas* 56–57 (1949). Oil and gas are closely associated in

nature, production, and their treatment as "minerals." *See* Robert G. Pruitt, Jr., *Mineral Terms— Some Problems In Their Use And Definition,* 11 Rocky Mtn. Min. L. Inst. 1, 15 (1966).

1920 Mineral Leasing Act. *See* Leshy, *supra*, at 91–92.

A leading treatise summarizes the precedent and states the oil and gas mineral reservation majority rule as follows:

> The courts are practically unanimous in holding that oil and gas are minerals in the broad and general sense in which that term is used. These decisions would seem to fix a common standard of meaning of the term, and it is a general rule, adhered to by a majority of the courts, that a conveyance or exception of minerals includes oil and gas, unless from the language of the instrument, or from the facts and circumstances surrounding the parties at the time of its execution, it is found that the term was used in a more restricted sense.

1A W.L. Summers, *The Law of Oil and Gas* § 135 at 268 (1954). "[T]oday only a few jurisdictions in the eastern United States take the position that oil and gas are not included within the term 'minerals' when used alone. The majority position is to construe a general reference to 'minerals' to include oil and gas unless there was a demonstrated intention to the contrary." [2] Robert G. Pruitt, Jr., *Mineral Terms—Some Problems in Their Use and Definition*, 11 Rocky Mtn. Min.L.Inst. 1, 12 (1966).

### B.

### *Other Minerals*

As to other minerals, Carpenter points out in his comment that the inclusion of substances other than oil and gas in the deed reservation term "other minerals" is not so settled. *See* Carpenter, *supra*, at 481. This was the situation in *Farrell v. Sayre*, 129 Colo. 368, 270 P.2d 190 (1954), where we approved the use of two criteria for determining whether a substance is a "mineral" for purposes of a deed reservation, when ambiguity arises from the language of the deed itself or the surrounding circumstances

regarding that substance's inclusion within the term "minerals." In *Farrell*, we held that (1) the word "minerals" when found in a reservation out of a grant of land means substances exceptional in use, in value, and in character, and does not mean ordinary soil which if reserved would practically nullify the grant; and (2) in deciding whether exceptional substances are "minerals," the true test is what that word means in the vernacular of the mining world, the commercial world, and landowners at the time of the grant, and whether the particular substance was so regarded as a "mineral." *See Farrell*, 129 Colo. at 373, 270 P.2d at 192–93. *See also United States v. Hess*, 194 F.3d 1164, 1173 (10th Cir.1999) (applying Colorado law); *United States v. 1,253.14 Acres of Land*, 455 F.2d 1177, 1179 (10th Cir.1972) (applying Colorado law); *Morrison v. Socolofsky*, 43 Colo.App. 212, 213, 600 P.2d 121, 122 (1979).

In *Farrell*, we held the deed reservation language for "minerals" to be ambiguous. *Farrell*, 129 Colo. at 372, 270 P.2d at 192. Two years after the deed transfer, the grantee entered into a contract to sell the gravel covering the entire surface of the property and the grantor objected, claiming that he had reserved the gravel and was entitled to a royalty. We found the taking of extrinsic evidence appropriate in determining the intent of the parties and applied the rule construing reservations against the grantor and in favor of the grantee. *See Lazy Dog Ranch v. Telluray Ranch Corp.*, 965 P.2d 1229, 1235 (Colo.1998) (holding that Colorado generally follows the "four corners" principle when construing deeds, but conditionally allows extrinsic evidence in some circumstances to determine whether the deed is ambiguous); *Notch Mountain Corp. v. Elliott*, 898 P.2d 550, 557 (Colo.1995) (holding that reservations are construed more strictly than grants, and ambiguities are construed

---

**2.** In their treatise, Williams and Meyers state:

Although scientifically th[e] term [minerals] refers to a chemical element or compound occurring naturally as a product of inorganic processes, it has been broadened colloquially in the oil, gas and coal extractive industries to include these products of organic processes. In most of the producing states it is a rule of property that the term "minerals" includes oil

and gas unless the instrument creating the mineral interest by grant or reservation reveals that the parties intended the term to have a more restrictive meaning. Extrinsic evidence of intent in this regard is generally admissible only where the language of the instrument is ambiguous.

Howard R. Williams & Charles J. Meyers, *Oil and Gas Terms* 427 (1981).

against the grantor); *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313–14 (Colo.1984) (stating that whether an ambiguity exists and extrinsic evidence must be considered is a question of law).

In contrast to the substances at issue in *Farrell*, oil and gas have the settled meaning of being included as "minerals" in Colorado deeds reserving "other minerals."[3] We now proceed to discuss the Railroad grants and deed reservations at issue in this case.

## C.

### The Railroad Grants and Deed Reservations

#### 1. The Public Domain and Federal Action

The use of mineral reservations in deeds has a rich history. The federal government, state governments, Indian tribes, and private entities own reserved mineral interests in our state and nation. The nature of those reservations, whether private or governmental, is an outgrowth of the historical context in which they took place.

The United States originally possessed legal title to vast lands in thirty-one states. Those states are known as the public land states.[4] In those states, including Colorado, the United States disposed of the lands over a number of years, under a variety of different laws and for a variety of purposes. Initially, the government distinguished between mineral lands and nonmineral lands. *See* 43 U.S.C. § 201 (1970) (repealed by the Federal Land Policy and Management Act of 1976, 90 Stat. 2743, 2789, § 7; codified at 43 U.S.C. §§ 1701–1782 (1976)).

As to mineral lands, the mining laws provided for discovery and development of the minerals, but the government retained title. As to nonmineral lands, the government encouraged nonmineral uses and provided for land grants. In the early 1900s, the federal government moved toward a system of land grants with mineral reservations. *See generally* 43 U.S.C. §§ 161–302 (1994). Under those Acts, the United States made grants to railroads, miners, homesteaders, and states. The patents to the grantees contained mineral reservations, consistent with the Act of Congress under which the conveyance took place. For example, the Stock Raising Homestead Act of 1916 encouraged the settlement of lands then thought to be valuable primarily, if not exclusively, for ranching. *See id.* §§ 291–301. Those grants reserved "all coal and other minerals" under the terms of the Act. *Id.* § 299. Other grants issued under other Acts used reservations such as those at issue in this case: "all coal and other minerals within or underlying said lands," or "all oil, coal and other minerals."

#### 2. The Railroad Lands

The deeds at issue in this case originate from the Railroad as grantor. The Union Pacific Act of 1862, amended in 1864, granted odd-numbered sections of public land to the Railroad for every mile of track laid for the purpose of aiding the construction of a transcontinental railway. *See* Act of July 1, 1862, § 3, 12 Stat. 489, 492, *amended by* Act of July 2, 1864, ch. 216, § 4, 13 Stat. 356, 358; David Haward Bain, *Empire Express, Building the First Transcontinental Railroad* 115, 180 (1999). The original grant excluded "all mineral lands" from the conveyance, which gave rise to an assumption that the government did not intend to grant any minerals to the Railroad.

The Railroad's grant was twice mortgaged, in 1867 and again in 1873. In 1880, the Union Pacific Railway Company succeeded to the Railroad's interests. In 1898, the Railroad bought the railway's grants and interests. *See Union Pac. Land Resources Corp. v. Moench Inv. Co.*, 696 F.2d 88, 90 (10th Cir.1982).

The Railroad obtained patents to the land in 1901 from the Land Department of the United States.[5] While the original Union

---

**3.** Where a reservation for oil and gas exists, we have also recognized the rights of surface owners to prevent unreasonable interference with surface uses. *See Gerrity Oil & Gas Corp. v. Magness*, 946 P.2d 913, 926–27 (Colo.1997).

**4.** *See* 13 Neil E. Harl, *Agricultural Law* § 126.02[1][b], at 126–8 (1992); Loren L. Mall, *Public Land and Mining Law* 6–8 (1981).

**5.** Grants to Union Pacific comprised 665,998.34 acres in Colorado. *See* Report of the Public

Pacific Act of 1862 excepted "all mineral lands" from the land grants, the Supreme Court held that the exception refers to the determination at the time of patenting of the lands' mineral or nonmineral character, and did not affect the fee simple interest that the Railroad received with the patent. *See United States v. Union Pac. R.R.*, 353 U.S. 112, 116, 77 S.Ct. 685, 687, 1 L.Ed.2d 693, 696 (1957).

Accordingly, once the Railroad received patents on the land, a presumption arose that the patent included a fee simple title and that the Railroad then had the right to reserve mineral interests in lands granted under the Union Pacific Act. *See Moench*, 696 F.2d at 92. Hence, although the original grants in this case came from the federal government, the Railroad is a private grantor for purposes of analysis of the reserved mineral interest.

The Railroad grants included every odd-numbered section of land between the southern and northern boundaries of Weld County for 20 miles on each side of the railroad track. *See Union Pac. R.R. Co. v. Hanna*, 73 Colo. 162, 163, 214 P. 550, 551 (1923)(upholding Weld County tax assessments on Railroad mineral estates), *overruled on other grounds by Radke*, 138 Colo. at 209–10, 334 P.2d at 1087–88 (holding that words reserving the right to prospect and to remove minerals, if found, are not ambiguous and operate as a license and not a reservation). Carpenter makes the following commentary on the Railroad deed reservations:

> In Colorado, so far as railroad lands are concerned, we are involved only with patents to the Union Pacific Railroad Company or its predecessors in title, and more importantly with deeds *from* the Union Pacific which purport to convey only the surface estate to various grantees. Although there is no consistency in the choice of words used in these deeds, normally they recite a reservation of (1) all

coal, or all the coal and other minerals, or oil, coal and other minerals, (2) the right to prospect for, mine and remove the same, and (3) the right of ingress and egress, plus use of the surface for mining purposes.

Carpenter, *supra*, at 480 (emphasis in original); *see also Hanna*, 73 Colo. at 164, 214 P. at 551.

### 3. *This Case*

■ The grants and deed reservations at issue in this case, which date from 1906 to 1909, mirror Carpenter's description. Our sister jurisdictions of Wyoming, Utah, and Arizona have concluded that this language, particularly the term "other minerals" reserved from railroad conveyances, is conclusive in regard to the reservation of oil and gas. *See Anschutz Land & Livestock Co. v. Union Pac. R.R. Co.*, 820 F.2d 338, 343 (10th Cir.1987) (applying Utah law); *Moench*, 696 F.2d at 93 (applying Wyoming law); *Amoco Prod. Co. v. Guild Trust*, 636 F.2d 261, 264 (10th Cir.1980) (applying Wyoming law); *see also Spurlock v. Santa Fe Pac. R.R. Co.*, 143 Ariz. 469, 477–78, 694 P.2d 299, 308–09 (Ct. App.1984); *Miller Land & Mineral Co. v. State Highway Comm'n*, 757 P.2d 1001, 1002–03 (Wyo.1988).

■ We recognize these decisions for their adoption of the majority rule that a deed reservation for "other minerals" reserves oil and gas.[6] These cases point out that an established rule of law is important for reliably ascertaining mineral ownership and securing capital investment for mineral production. Allowing the introduction of extrinsic evidence many decades after the deed conveyances, especially, as here, after many years of actual production of oil and gas from the properties invites uncertainty and litigation, as necessary evidence has long since disappeared or sheds no real light on the parties' individual intentions.[7]

Lands Comm'n 146, S. Doc. No. 189, 58th Cong., 3d sess.

6. We decline to hold that the "other mineral" language reserves the entire subsurface estate.

7. In his treatise, Hemingway states:

> It seems highly unrealistic to attempt to determine, at a later date, whether, in an early conveyance, the parties intended to include or to exclude oil and gas from their usage of the term "minerals," where such intent is purportedly determined by reference to "facts and circumstances then existing" and of which adequate proof has long since vanished. All too

Based on our study of Colorado precedent, custom, usage, and learned commentary thereon, we hold that a deed reservation for "other minerals" reserves oil and gas. Here, nearly a century after the conveyances and deed reservations in this case, Landowners ask us to send this case to trial to determine whether "other minerals" includes oil and gas. We decline to do so. This case presents a legal question: the interpretation of typical deed language that has a long history of derivation and use in regard to oil and gas. Colorado adheres to the majority rule that a general deed reservation of "other minerals" reserves oil and gas. We treat this matter as one of property law and determine that precedent forecloses the question plaintiffs pose for trial. *See* 13 Neil E. Harl, *Agricultural Law* § 126.03[7][g][ii] at 126–123–24 (1992) (observing that adoption of the majority oil and gas rule has such effect). As postured before the trial court, despite Landowners' protestations, the issue on summary judgment was one of law.

### III.

Accordingly, we affirm the court of appeals judgment that the deed reservations in this case reserve oil and gas, restricting the effect of the trial court's declaratory judgment in favor of UPRC to those substances, and upholding the trial court's order dismissing Landowners' complaint for quiet title, trespass, and damages.

Justice RICE concurs in the judgment only.

Chief Justice MULLARKEY and Justice COATS join in concurring with the judgment only.

Justice RICE, concurring in the judgment only:

I concur with the majority's decision to affirm the court of appeals' judgment upholding the trial court's order granting summary judgment in this case. However, I believe that the majority's reasoning departs from well-established principles of deed interpre-

tation used in Colorado, and conflicts with the reasoning adopted by the majority of courts that have previously considered this issue. In my opinion, the majority improperly considers extrinsic evidence of Colorado history, custom, and usage in determining the meaning of the term minerals, as used in the general deed reservation in this case. Therefore, I respectfully decline to join the majority opinion.

### A.

*General Principles of Deed Interpretation*

The majority affirms the court of appeals' decision upholding the trial court's grant of summary judgment in this case. Maj.Op. at 354. In doing so, the majority determines that the issue of whether the term minerals includes oil and gas is a legal, rather than a factual question, thus concluding that a trial in this case is unnecessary. *Id.* However, in direct contradiction to the decisions below, which hold that the term minerals is unambiguous as a matter of law, the majority holds that the term minerals is "not inherently unambiguous" and that extrinsic evidence may be required to determine the parties' intent under certain circumstances. *Id.* at 349. The majority then relies on historical information concerning custom and usage to determine that the term minerals has a well-settled meaning that includes oil and gas. *Id.* As discussed below, this reasoning conflicts with general principles of deed interpretation and with the majority of other jurisdictions that have considered this issue.

It is well established in Colorado that a primary goal in interpreting a deed is to effectuate the parties' intent, and that such intent may be ascertained by reviewing extrinsic evidence when a deed is found to be ambiguous. *Lazy Dog Ranch v. Telluray Ranch Corp.*, 965 P.2d 1229, 1235 (Colo. 1998); *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313 (Colo.1984). However, when a deed is unambiguous, the intentions of the parties must be determined from the deed itself, and consideration of extrinsic

---

often this "intent," as determined, results from application of the rules of evidence concerning burden of proof and presumptions, which have

little relevance to the actual intent of the parties.

Hemingway, *supra*, at 7.

evidence of intent is not permissible. *O'Brien v. Village Land Co.*, 794 P.2d 246, 249 (Colo.1990); *First Nat'l Bank v. Allard*, 182 Colo. 297, 301, 513 P.2d 455, 457 (1973); *Simson v. Langholf*, 133 Colo. 208, 216, 293 P.2d 302, 307 (1956); *Brown v. Kirk*, 127 Colo. 453, 456, 257 P.2d 1045, 1046 (1953).

The issue of whether an ambiguity exists is a matter of law to be determined by the court. *Pepcol*, 687 P.2d at 1314. In making this determination, a court may conditionally admit extrinsic evidence on the issue of ambiguity to determine whether a deed is ambiguous. *Lazy Dog*, 965 P.2d at 1235; *O'Brien*, 794 P.2d at 249 n. 2. However, we have held that "[i]n cases where the language specifically and completely addresses the issue at hand, there will be no need to look to the surrounding circumstances." *Lazy Dog*, 965 P.2d at 1236. In such cases, courts need not consider extrinsic evidence for purposes of determining ambiguity, nor for purposes of ascertaining the parties' intent.[1]

The majority opinion fails to follow these general principles of deed interpretation. Without regard to whether the language in the deed reservation in this case completely addresses whether oil and gas are included as minerals, the majority determines that the term minerals has a well-settled meaning that includes oil and gas. Maj. Op. at 349. In doing so, the majority relies on historical information concerning custom and usage to determine both the ambiguity of the term minerals and its meaning.

Furthermore, by relying on such information to ascertain the meaning of the term minerals, the majority determines an issue of fact properly determined by a trial court. *See Pepcol*, 687 P.2d at 1314 (holding that once a provision is determined to be ambiguous, its meaning is an issue of fact to be determined by a trial court's review of extrinsic evidence). Indeed, the custom and usage information relied upon by the majority is precisely the type of evidence the trial court barred by its grant of summary judgment.[2] Thus, the majority opinion has the effect of denying the landowners the opportunity to present their evidence concerning custom and usage, while at the same time relying on its own descriptions of custom and usage.

### B.

### *The Majority Rule*

The majority's reasoning also conflicts with the so-called "Majority Rule," which holds that the term minerals is unambiguous as a matter of law. In contrast to the Majority Rule, the majority opinion holds that the term minerals is "not inherently unambiguous," and that extrinsic evidence of intent may be required in certain circumstances. Maj. op. at 349. The majority opinion then concludes, based on its review of Colorado history, custom, and usage, that the term minerals includes oil and gas. *Id.*

The courts that have adopted the Majority Rule have specifically declined to consider such evidence and hold that the term miner-

1. I note the Tenth Circuit's use of extrinsic evidence to ascertain the ambiguity of a mineral reservation in *United States v. 1,253.14 Acres of Land*, 455 F.2d 1177 (10th Cir.1972). However, this approach is inconsistent with later Tenth Circuit cases that have determined that the term minerals is unambiguous as a matter of law. *See Anschutz Land & Livestock Co. v. Union Pac. R.R. Co.*, 820 F.2d 338, 343 (10th Cir.1987); *Amoco Prod. Co. v. Guild Trust*, 636 F.2d 261, 264 (10th Cir.1980).

2. The record demonstrates that the landowners attempted to present thousands of pieces of evidence concerning the parties' intent at the time of the conveyance, Colorado history, custom and usage, and early Union Pacific Railroad operations. *See* R. at 834. The tendered evidence included numerous geological articles, treatises and books concerning mining, mineral terminol-

ogy, and early oil and gas development in Colorado, letters exchanged between the parties around the time of the conveyance, an early Colorado statute, books concerning the history of Colorado and of Weld County, hundreds of newspaper articles dated around the time of the conveyance, historical documents concerning early Union Pacific Railroad operations, and guides to Union Pacific Railroad lands from the late 1800s. *See id.*

The majority opinion likewise relies on treatises concerning mineral terminology and oil and gas law, as well as the same early Colorado statute sought to be introduced by the landowners. Maj.Op. at 349–351. The majority also supports its holding through its description of the history of the Union Pacific Railroad lands in this case. *See id.* at 352–353.

als, as used in a deed reservation, is unambiguous *as a matter of law. See Anschutz Land & Livestock Co. v. Union Pac. R.R. Co.,* 820 F.2d 338, 343–44 (10th Cir.1987) (adopting the district court's reasoning in holding that a reservation of "other minerals" is unambiguous under Utah law); *Union Pac. Land Res. Corp. v. Moench Inv. Co.,* 696 F.2d 88, 93 (10th Cir.1982) (holding that the phrase "coal and other minerals" as used in a deed reservation, is unambiguous under Wyoming law); *Amoco Prod. Co. v. Guild Trust,* 636 F.2d 261, 264 (10th Cir.1980) (agreeing with the district court's conclusion that the reservation of "coal and other minerals" is unambiguous under Wyoming law); *Spurlock v. Santa Fe Pac. R.R. Co.,* 143 Ariz. 469, 694 P.2d 299, 308–09 (Ct.App.1984) (holding the term minerals unambiguous as a matter of law after considering rationales of courts in other jurisdictions); *Miller Land & Mineral Co. v. State Highway Comm'n,* 757 P.2d 1001, 1002–03 (Wyo.1988) (holding that a reservation of "all minerals and mineral rights under said lands" was clear and unambiguous).[3]

In *Miller Land,* the Supreme Court of Wyoming held that a reservation of "all minerals and mineral rights existing under said ... lands" was clear and unambiguous as a matter of law. 757 P.2d at 1002–03. The court found no need to consider extrinsic evidence of intent. *See id.* at 1002. The court rejected the minority position that a general reservation of "all minerals" is inherently ambiguous, stating that those courts "have traveled over a long and tortuous path in a complex and hopeless search to discover the particular minerals the parties intended to reserve." *Id.* The court found that such an approach would result in title uncertainty and the need to litigate each mineral reservation to determine which minerals it encompasses. *See id.*

In *Amoco,* the Tenth Circuit interpreted reservations identical to those in this case. 636 F.2d at 262–63. The court there held the reservation language to be unambiguous as a matter of law and noted that authority to the contrary was very limited. *See id.* at 264. Accordingly, the court upheld the district court's application of the parol evidence rule in excluding extrinsic evidence of intent. *See id.* at 263. Similarly, in *Anschutz,* the Tenth Circuit found no ambiguities in reservations of "all coal and other minerals within or underlying said land" and of "all oil, coal and other minerals." *Anschutz,* 820 F.2d at 343–44. The court there held that the reservation language was broad enough to encompass oil and gas as a matter of law, thereby precluding the consideration of extrinsic evidence of intent. *See id.* at 344.

The majority opinion correctly notes that an established rule of law is important in providing a reliable means for ascertaining mineral ownership and that the use of extrinsic evidence to ascertain the parties' intent creates complex litigation issues involving endless and unreliable factual determinations. Maj. Op. at 353; *see* John S. Lowe, *What Substances Are Minerals?,* 30 Rocky Mtn.Min.L.Inst. 2–1, 2–10 (1985). Because the deeds in question are often over one hundred years old, and the parties to the original deeds are usually unavailable, successor parties in interest must present historical documents, expert testimony, and other unreliable and burdensome evidence to attempt to establish intent. *See* Eugene O. Kuntz, *The Law Relating to Oil and Gas in Wyoming,* 3 Wyo. L.J. 107, 114 (1949). However, although the majority opinion recognizes that such an approach is ineffective, it nonetheless holds that such extrinsic evidence may be considered under certain circumstances, without providing further guidance as to when such circumstances might arise. Maj. Op. at 349. Indeed, in this case,

---

**3.** *Cf. United States v. Hess,* 194 F.3d 1164, 1174 (10th Cir.1999). In *Hess,* the Tenth Circuit held a reservation of "all minerals" in a land exchange patent to be ambiguous as applied to gravel deposits near the surface of the property in question. *Id. Hess* is distinguishable from the case at bar because it involved the interpretation of a reservation in a federal exchange patent rather than a private deed reservation. *See id.*

The court in *Hess* noted the unique treatment of a mineral reservation in an exchange patent in relation to such a reservation in a land grant patent. *See id.* at 1171. Also, the court in *Hess* based its holding on federal law as determined in reference to state law, and looked to Congress's intent in passing the Indian Reorganization Act. *See id.* at 1173.

the majority considers historical information concerning Colorado custom and usage in making its determination, while preventing the landowners from introducing precisely the same type of evidence.

I would employ the reasoning of courts applying the Majority Rule and would hold that the term minerals, as used in a general deed reservation, is unambiguous *as a matter of law.* As such, I would find no need to consider the type of factual, historical information discussed in the majority opinion and proffered by the landowners in this case to determine the meaning of the term minerals. Rather, a review of Colorado case law and cases in other jurisdictions would guide my determination of this issue of law.

In Colorado, the term minerals, as used in a deed reservation, has not been limited to those substances specifically listed in the reservation. *See, e.g., Gilpin Inv. Co. v. Perigo Mines Co.,* 161 Colo. 252, 258, 421 P.2d 477, 480 (1966) (holding that the use of the term "mineral rights" in a deed reservation included flecks of gold and other valuable minerals remaining on the surface after rains and surface waters had washed gravel down the slope of the property); *Calvat v. Juhan,* 119 Colo. 561, 566, 206 P.2d 600, 603 (1949) (holding that gas, though not specifically enumerated, was among those minerals excluded by a deed reservation).

Similarly, courts in other jurisdictions have held that a general reservation of minerals includes minerals not mentioned specifically in a reservation. *Amoco,* 636 F.2d at 264 (noting that Western states have adopted broad, all-inclusive interpretations of the term minerals). Several courts have specifically held that the term minerals includes oil and gas. *Id.; Anschutz,* 820 F.2d at 343; *Missouri Pac. R.R. Co. v. Strohacker,* 202 Ark. 645, 152 S.W.2d 557, 561 (1941).

I am persuaded by the reasoning of the Tenth Circuit cases that have interpreted reservations identical to those in this case as including oil and gas. *See Anschutz,* 820 F.2d at 343 (holding that the reservations were sufficient to encompass oil and gas interests as a matter of law); *Amoco,* 636 F.2d at 264 (holding that the reservation of "coal and other minerals" unambiguously includes oil and gas). In *Amoco,* the court cited several academic sources indicating that the majority of states have held that a mineral reservation includes oil, gas and petroleum products, unless the language in the instrument indicates otherwise. *Amoco,* 636 F.2d at 264; *see* 1 Howard R. Williams & Charles J. Myers, *Oil and Gas Law* § 219.1 (1978); Richard W. Hemingway, *The Law of Oil and Gas* § 1.1 (1971). The language of the deed in the present case indicates no restriction on the term minerals. Accordingly, I would hold that the term minerals, as used in the general deed reservation in this case, includes oil and gas.

### C.

*Conclusion*

I agree with the majority's decision to affirm the court of appeals' judgment upholding a finding of summary judgment in this case. However, because the majority opinion departs from well-established principles of deed interpretation and the Majority Rule adopted in other jurisdictions, I cannot join its opinion.

I would hold that the term minerals, as used in the general deed reservation in this case, is unambiguous as a matter of law. Accordingly, I would hold that the trial court properly disregarded extrinsic evidence proffered by the landowners concerning Colorado history, custom, and usage.

I would further hold that the term minerals, as used in the general deed reservation in this case, includes oil and gas. Therefore, like the majority, I would affirm the judgment of the court of appeals upholding the trial court's judgment.

I am authorized to say that Chief Justice MULLARKEY and Justice COATS join in concurring with the judgment only.