**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 29, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

RICKY T. GRAHAM; CONNIE L.
ARCHULETA,

    Plaintiffs - Appellants,

v.

UNITED STATES OF AMERICA,

    Defendant - Appellee.

No. 24-1164
D.C. No. 1:21-CV-03053-NYW)
(D. Colo.)

_____

**ORDER AND JUDGMENT***
_____

Before **HARTZ**, **TYMKOVICH**, and **EID**, Circuit Judges.**
_____

Ricky T. Graham and Connie L. Archuleta (the Grahams) filed suit against the

United States under the Quiet Title Act (QTA), 28 U.S.C. § 2409a, in the United

States District Court for the District of Colorado, seeking a declaration that they hold

title to the mineral interests in a parcel of land (the Parcel) in Adams County,

Colorado. The district court held that the suit was untimely under the QTA's 12-year

statute of limitations because the Grahams' predecessors in interest had constructive

_____

    * This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

    ** After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.

notice of the United States' claim to the mineral interests starting in 1943, when the United States recorded a warranty deed granting it a fee-simple interest in the Parcel. The Grahams appeal. Exercising jurisdiction under 28 U.S.C. § 1291, we agree with the district court and affirm.

## I. BACKGROUND

### A. Factual Background

The facts are not disputed. In 1902 the United States issued a patent granting title to the Parcel to David McD. Graham. He continued to own the Parcel, subject to a mortgage and a notice of lis pendens, until his death. The Parcel then passed through several subsequent owners before it was conveyed to Ernest L. Tiedeman and Myra F. Tiedeman in 1929.

After the United States filed a petition to condemn 20,000 acres in Adams County to establish the Rocky Mountain Arsenal, the Tiedemans conveyed the Parcel in fee simple to the United States via a warranty deed (the 1943 Deed), which was recorded on January 26, 1943. The deed provided that the Tiedemans:

> do covenant, grant, bargain and agree to and with the United States of America and its assigns, that at the time of the ensealing and delivery of these presents, they are well seized of the premises above conveyed, as of good, sure, perfect, absolute and indefeasible estate of inheritance, in law, in fee simple, and have good right, full power and lawful authority to grant, bargain, sell and convey the same in manner and form as aforesaid, and that the same are free and clear from all former and other grants, bargains, sales, liens, taxes, assessments and encumbrances of whatever kind or nature soever.

2

Aplt. App., Vol. 2 at 344. The 1943 Deed did not except mineral rights from the conveyance and did not mention any prior reservation of mineral rights. No recorded deed reflects that the Parcel's mineral estate was ever severed from its surface estate.

There are, however, three internal government documents—all created well after the Tiedeman conveyance—suggesting that the Parcel's mineral rights may have been reserved to David Graham. An internal tract register of the Army Corps of Engineers (the Corps) prepared on May 20, 1949, states that mineral rights to the parcel were reserved to David Graham. And two internal Corps letters—one from 1978 and one from 1981—both list a mineral reservation to David Graham as an encumbrance on the Rocky Mountain Arsenal.

### B.    Procedural History

The Grahams, who are great-grandchildren of David Graham, filed suit to quiet title to the Parcel's mineral estate on November 12, 2021. They alleged that they did not become aware of the United States' claim to the Parcel's mineral rights until they received a letter from the Bureau of Land Management in 2018 declining to recognize their claim to the mineral rights.

The United States moved for summary judgment, arguing that the Grahams' claim was barred by the QTA's statute of limitations. The district court granted the motion.

## II.    DISCUSSION

The sole issue on appeal is whether the 1943 Deed gave the Grahams' predecessors in interest constructive notice of the United States' claim to the Parcel's

3

mineral rights. If so, the Grahams' action is time-barred by the QTA's 12-year statute of limitations, 28 U.S.C. § 2409a.

"We review the district court's rulings on summary judgment de novo." *Hamric v. Wilderness Expeditions, Inc.*, 6 F.4th 1108, 1121 (10th Cir. 2021). Summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). No facts are in dispute.

The QTA is the "exclusive means by which adverse claimants [may] challenge the United States' title to real property." *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 (1983). A cause of action accrues under the Act "on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States" to the subject property. 28 U.S.C. § 2409a(g). An action "shall be barred unless it is commenced within twelve years of the date upon which it accrued." *Id*. This "limitations period is strictly construed in favor of the United States." *Rio Grande Silvery Minnow (Hybognathus amarus) v. Bureau of Reclamation*, 599 F.3d 1165, 1176 (10th Cir. 2010). "[T]he trigger for starting that twelve-year clock running is an exceedingly light one." *George v. United States*, 672 F.3d 942, 944 (10th Cir. 2012) (Gorsuch, J.). "[A]n appreciation of the full contours of the government's assertion or claim isn't even needed to start the QTA's clock. It is enough if the plaintiff or her predecessor knew or should have known of the existence of *some* assertion—some claim—by the government of an adverse right." *Id.* at 947 (citation and internal quotation marks omitted).

4

"[C]onstructive notice under applicable state recording statutes" is "one of the conditions that will satisfy the 'should have known' language" of the QTA. *Amoco Prod. Co. v. United States*, 619 F.2d 1383, 1387 (10th Cir. 1980). Under Colo. Rev. Stat. § 38-35-109, "proper recording of documents provides constructive notice of interests affecting title." *Collins v. Scott,* 943 P.2d 20, 22 (Colo. App. 1996). "When a party properly records his interest in property with the appropriate clerk and recorder, he constructively notifies 'all the world' as to his claim." *Franklin Bank, N.A. v. Bowling*, 74 P.3d 308, 313 (Colo. 2003). The Grahams concede that the 1943 Deed was properly recorded.

The issue before us therefore becomes whether the 1943 Deed to the United States purported to include the mineral rights to the Parcel. It did. It conveyed the Parcel in fee simple with no reservations or encumbrances. "A good and sufficient title in fee simple means the legal estate in fee, free and clear of all valid claims, liens and encumbrances whatsoever," *Walpole v. State Bd. of Land Comm'rs*, 163 P. 848, 850 (Colo. 1917) (internal quotation marks omitted), *superseded by statute on other grounds as stated in Driscoll v. State*, 297 P. 989, 989 (Colo. 1931), "except as listed in the deed," *Campbell v. Summit Plaza Assocs.*, 192 P.3d 465, 473 (Colo. App. 2008). "The reservation of mineral rights constitutes an encumbrance . . . ." *Eychaner v. Springer*, 527 P.2d 903, 904 (Colo. 1974). Thus, a reservation of mineral rights would have been inconsistent with the fee-simple conveyance unless the reservation was included in the deed. Because the 1943 Deed expressly denied

"encumbrances of whatever kind or nature soever," Aplt. App., Vol. 2 at 344, it had to be understood to include the mineral estate.

Further, conveyances under Colorado law are presumed to include both mineral and surface rights unless the grantor says otherwise. "It is well established that a conveyance of land by general description, without any reservation of a mineral interest, passes title to both the land and the underlying mineral deposits." *O'Brien v. Vill. Land Co.*, 794 P.2d 246, 249 (Colo. 1990); *accord Great N. Props., LLLP v. Extraction Oil & Gas, Inc.,* 547 P.3d 1110, 1117 (Colo. 2024) ("[I]f a grantor doesn't expressly indicate an intent to reserve or except the mineral estate, the ownership of the surface carries with it the ownership of the underlying minerals." (internal quotation marks omitted)). Nor was there (as the Grahams concede) any prior record of severance or reservation of mineral interests in the chain of title, which may have provided notice that the title received by the United States was encumbered. *Cf. McCormick v. Union Pac. Res. Co.,* 14 P.3d 346, 349 (Colo. 2000), *as modified* (Dec. 14, 2000) ("The reservation of a mineral estate necessarily severs it from the surface estate, creating multiple estates in the same land."); *Calvat v. Juhan*, 206 P.2d 600, 603 (Colo. 1949) (Once the mineral rights are severed from the surface estate, "possession of the surface [does] not constitute possession of the severed mineral estate. The possession of each, like the title, became distinct from that of the other."). Hence, the 1943 Deed on its face conveyed mineral title to the United States and, at the least, provided constructive notice that the government claimed such title.

Perhaps something authoritative from the United States Government could have abrogated its claim to the mineral estate and defeated any constructive notice afforded by the 1943 Deed. But the Corps documents relied on by the Grahams hardly fill the bill. Not only is there no reason to think they ever became public, *see Rio Grande Silvery Minnow*, 599 F.3d at 1185 (subsequent government statements did not vitiate prior notice in part because "there was no evidence" that the party against whom the statute of limitations was being invoked "knew of any of these statements during the relevant time period" (internal quotation marks omitted)), but even if they had been publicized, "intra-office memoranda, and similar intra-governmental communications do not bind the government, such that they can effect an abandonment of property and stop the QTA's limitations clock." *Id.* at 1187 (internal quotation marks omitted).

Nor are we persuaded by Plaintiffs' suggestion that the internal Corps documents must have been based on title documents showing reservation of the mineral rights to their ancestor. They seem to be asserting, in essence, that their predecessors in title could not have been put on notice by the 1943 Deed to the United States because the deed could not have conveyed what the Tiedemans did not have—that is, title to the mineral interests of the Parcel. But even if we were to credit Plaintiffs' speculation and assume that they could eventually prove their title, that is irrelevant to the timeliness of their QTA lawsuit. The task of the district court on the motion for summary judgment was not to determine whether Plaintiffs had title to the minerals on the Parcel; it was only to determine when Plaintiffs or their predecessors

7

in interest had constructive notice of the government's claim of title. And the court correctly resolved that issue by deciding that the 1943 Deed gave notice of the government's claim. "The merits of [a] claim or assertion of adverse interest are irrelevant. One can be on *notice* of a claim even if that claim lacks any legal *merit*." *George*, 672 F.3d at 946. The Grahams' claim accrued in 1943 when the United States' deed was recorded. Their lawsuit is therefore untimely under the QTA's 12-year statute of limitations.

### III.    CONCLUSION

We **AFFIRM** the judgment below.

Entered for the Court

Harris L Hartz
Circuit Judge